## JUNE, 1924.

### SIDNEY WELK v. THE STATE.

No. 8425. Delivered June 25, 1924.

Rehearing denied, November 12, 1924.

**Murder—Change of Venue—Properly Refused.**

A motion for a change of venue was presented in this case. Several of appellant's witnesses upon this point averred that he could obtain a fair trial in Dallas county. It was shown that in said county there were about seventy-five thousand qualified jurors. All the witnesses for the state testified that a fair and impartial trial could be had in Dallas county. The burden of showing that the venue should be changed, is placed upon the accused, and the rule is well settled that unless it is clear that the judicial discretion of the trial court has been abused, a reversal will not be ordered.

**2.—Same—Continuance—Witnesses Present—No Injury Shown.**

Where a motion for a continuance is presented and upon the trial, all of the witnesses, for whose absence the continuance is sought, are present, no injury is shown, and a motion for a new trial on this ground is properly refused.

**3.—Same—Motion for Continuance—Surprise—Not Material.**

Where during the trial an application for continuance is made on the ground of surprise at the testimony of a state's witness, it is properly refused, unless the bill of exception clearly points out some injury done appellant by such action. An assertion that witness made a statement to attorney for appellant at variance with his testimony given on the trial, does not show such injury as would warrant the granting of a new trial.

**4.—Same—Evidence—Of Another Offense—Permissible.**

Where in the development of the case it is shown that the killing grew out of an attempt of appellant to escape from the county jail, it was proper to show that appellant was, at the time confined in the jail on a charge of murder, as going to show motive.

**5.—Same—Charge of Court—Limiting Evidence—Correct.**

Where in limiting the testimony of appellant having been confined on a charge of murder the court said: "Now I instruct you that if you consider said evidence that he was so confined upon the charge of murder, for any

purpose at all, you will only consider it, for the purpose of aiding you, if it does aid you, in determining the motive, or intent with which the defendant acted at the time the said Willis Champion was killed, if· he was, and for no other purpose." Said charge was a correct presentation of the law, and is not subject to the criticism that it is upon the weight of the testimony.

#### 6.—Same—Charge of Court—On Coercion—Not in Evidence.

That no issue must be submitted in the court's charge that is not raised by the evidence, is the well settled rule laid down repeatedly by this court. That appellant at the time of the killing was actuated by the coercion of Gaines, is not sufficiently presented by the evidence to justify a charge on that issue.

#### 7.—Same—Witness—Impeachment of—Limited in Charge.

A proper predicate was laid by the state for the impeachment of the witness Hadley, by asking him with reference to other statements made by him, at variance with his testimony given on the trial, and upon his denial of such statements, witnesses were introduced, who swore that Hadley had so stated to them. This testimony was admissible, and was properly limited in the charge of the learned trial court.

#### 8.—Same—Appointment of Counsel—Right to Confer with Client—Not to be Denied.

Appellant complain's that he was denied the right to confer with counsel, appointed by the court to represent him on his trial. Our constitution guarantees to every accused person the right to be heard by himself, or by counsel, or both. This right has ever been jealously guarded by this court. Appellant in this case did confer with his counsel appointed by the court to represent him during six days preceding the date of his trial. Art. 558 of our C. C. P. provides that counsel shall be appointed for accused persons in capital cases and "the counsel so appointed shall have at least *one day* to prepare for trial." No request for a postponement or continuance in order to have further opportunity for consultation and preparation, was made by appellant. We hold that no error is shown.

Appeal from Criminal District Court No. 2 of Dallas County. Tried below before the Hon. C. A. Pippin, Judge.

Appeal from a conviction for murder; penalty fixed at death.

The opinion states the case.

*J. Frank Wilson* and *Wm. Madden Hill*, of Dallas, for appellant.

*Shelby Cox*, District Attorney, Dallas, *Tom Garrard*, State's Attorney, and *Grover C. Morris*, Assistant State's Attorney, for the State.

LATTIMORE, JUDGE.—From conviction in Criminal District Court No. 2, of Dallas County, for murder, with punishment·fixed at death, this appeal is taken.

Mr. Champion, assistant jailer in the Dallas county jail, was shot in'the back and killed on the sixth floor of said jail on September 26, 1923. The killing grew out of an attempted jail delivery

participated in by appellant and one Gaines, the latter being killed
by officers who came presently to the scene and who testified in
detail to the battle with Gaines and appellan upon their arrival.
Two pistols had been smuggled into the jail, one an automatic 32,
and the other a 38 special revolver. The 38 was found by the body of
Gaines, and the automatic by appellant, who was wounded in said
battle. Deceased told said officers that he was going to die, that
Pete Welk (appellant) shot him in the back. Inmates of the jail
described the attack on Mr. Champion by Gaines and appellant,
and affirmed that because apparently of the jailer's refusal to de-
liver to them a key which was necessary to effect their escape, Welk
shot the officer with the automatic pistol as the latter threw the key
out at a window. Death resulted the same night. Appellant did not
testify herein, but introduced one Hadley as his only witness, who
stated that he was an inmate of the jail and cell-mate with appellant.
This witness testified in effect that Gaines shot Mr. Champion, and
his evidence tended to show that appellant had taken no part in
the matter until after Mr. Champion was shot. Upon predicates prop-
erly laid this witness was impeached by proof of statements at vari-
ance with his testimony. Other matters of testimony may be presented
in our discussion of the legal questions raised.

Appellant sought a change of venue, which application was con-
troverted by the State in an attack upon the means of knowledge of
his two compurgators. The learned trial judge heard evidence. Most
of the witnesses favorable to appellant lived in one community in
Dallas county, a rural community in the northeast part of said
county, and most, if not all, of them avowed their lack of knowledge
of the attitude of prospective jurors in other parts of the county.
Several of appellant's witnesses upon this point averred their be-
lief that he could obtain a fair trial in Dallas county. It was in tes-
timony that in said county there were about seventy-five thousand
possible jurors, and all the witnesses for the State testified that
a fair and impartial trial could be had therein. The books are full
of decisions on the subject and we do not deem it necessary to dis-
cuss them here. The burden of showing that the venue should be
changed is placed by law upon the accused, and the rule is well set-
tled that unless it is clear that the judicial discretion of the trial
court has been abused, a reversal will not be ordered. The author-
ities seem in accord and need no citation.

Appellant asked for a continuance to obtain three witnesses.
His bill of exceptions complaining of the refusal of his applica-
tion is qualified by the statement that all three of said witnesses were
present at the trial and were tendered to appellant. Another ap-
plication was made for continuance during the trial apparently
on the ground of surprise at the testimony of a State witness, it
being asserted that the witness had made a statement to the attorney

of appellant, variant from his testimony. Neither the application made during the trial, nor the bill of exceptions to its refusal shows how appellant could have been advantaged by a postponement or continuance of the case. The witness in question admitted that he did wrongly inform appellant's counsel, but gave as his reason that he was at the time in the same part of the jail as the appellant and that he was afraid to tell appellant's counsel the truth. Nothing is averred as to the expectation of ability of appellant to obtain by a postponement any fact or facts contrary to those revealed by the testimony of said witness. Having admitted that he had falsified, no effort was further made to impeach said witness, and we perceive no error in overruling either application for continuance.

In the development of its case the State showed that at the time of the commission of this offense appellant was confined in the county jail on a charge of murder, to which testimony objection was made on the ground that this was proof of an extraneous crime, was hearsay, and prejudicial to appellant. The evidence was admitted to show motive. It seems reasonable. One casually in jail would not likely kill his jailer in an effort to get out. One charged with a misdemeanor would hardly go to the lengths to effect escape as might one confined on a felony charge—and this would seem especially true if the felony be of the grave character of murder. It is held by this court that proof of extraneous crimes becomes admissible when same shows a motive. Hamblin v. State, 41 Texas Crim. Rep., 140; Smith v. State, 44 Texas Crim. Rep. 59; Renfro v. State, 42 Texas Crim. Rep., 393; Morrison v. State, 40 Texas Crim. Rep., 473; Johnson v. State, 29 Texas Crim. App., 150; Chandler v. State, 60 Texas Crim. Rep., 329. The proof in the instant case on this point went no further than to show that appellant was held under a charge of murder. Mr. Branch cites many cases in his Annotated P. C., Sec. 1880, upholding the admissibility of such proof when material to show motive.

In the charge of the learned trial court appears the following:
"Now, I instruct you that if you consider said evidence that he was so confined upon the charge of murder for any purpose at all, you will only consider it for the purpose of aiding you, if it does aid you, in determining the motive or intent with which the defendant acted at the time the said Willis Champion was killed, if he was, and for no other purpose."

This was excepted to as being on the weight of the evidence—as being an instruction in effect that appellant being held on a charge of murder, was the motive for the homicide—and that same was a virtual instruction that appellant did kill deceased. We think analysis of the charge quoted reveals the lack of merit in these contentions. Other exceptions to the charge were based on its failure to

submit the issue of coercion of appellant by Gaines. That no issue need
be submitted unless raised by the testimony is the plain holding of
this court in many cases. Appellant's testimony tending to raise this
issue must be derived solely from that of his witness Hadley. After
stating that he was being put back in jail by deceased at the time
of the attack, and that Gaines with a pistol ordered deceased to
"leave go that door" and that Gaines by his efforts kept the door
open, and that deceased started around the cell, said witness re-
ferring for the first time to appellant, said:

"Pete Welk was standing here by the sink, leaning on a table
like this, with his arm up like that, and George turned around and
says, 'Come out of there, Pete,' and Pete walked out and George
turned again to Captain Champion, who was going down this corri-
dor this way. I was standing back over here against the wall. and I
turned my head just about a second like that and the shot was
fired. When Pete walked out, George said, 'Get those trusties.'
When Pete came out of the cells Gaines was right along here, and Mr.
Champion was right about here. When George said 'Get those
trusties,' Pete ran over her, and I seen him start in the hospital. I
could not say what kind of a gun Gaines had when he shot Champion,
but I know it wasn't no large gun like a 45 or anything like that. I
ran around here and down this corridor and squatted down, then
I came out around here and George came up with Champion like
this, holding his collar and ramming him with his gun. I don't
know where Pete Welk was at that time. Later Pete came from
around here somewhere, I don't know where, but he came by me here
holding his gun like this, and says 'Get back around there.' I
says, 'Pete, you know me,' and he said, 'I know you, but it is best
for you to go back around there.' That is the last time I saw Pete
until I saw him lying out here under the steps; that was after the
officers had come in. George was in the hospital the last time I
saw him; he was dead at that time."

As we understand this it seems an effort on the part of appellant
to show he took no part in the homicide, and not to show that he
aided in same but was forced so to do by Gaines. We find noth-
ing in this testimony reasonably indicating coercion or duress on the
part of Gaines, and think the charge not open to the exception.
Art. 44 of our Penal Code, on the subject under discussion, pro-
vides that in order to avoid liability for acts done under duress—
threats or actual violence toward the party claiming to be so co-
erced or forced to act, must be shown. If threats are relied on
they must be, first, the infliction of death or personal injury; sec-
ond, such as are calculated to intimidate a person of ordinary
firmness. Applying what is said in this article to the facts in the
instant case, we observe no proof of any threat or violence to appel-

lant by Gaines, and therefore need go no further in a discussion of the proposition raised.

The State laid proper predicates for the impeachment of the witness Hadley, by asking him with reference to statements made by him at variance with his testimony as given on the witness stand, and upon his denial of such statements witnesses were introduced who swore that Hadley had so stated to them. This testimony was admissible and was properly limited in the charge of the learned trial court.

Serious complaint is made of the refusal of the sheriff of Dallas county to permit counsel who had been appointed to represent appellant, to see him until the 17th of October, the trial being set for October 22nd. We regret that on the facts this matter seems in some confusion. From the affidavit of appellant's counsel appended to his motion for new trial we learn that said counsel was appointed to represent appellant on October 8th, and made six several demands upon the sheriff for permission to see appellant before he was accorded the privilege on the 17th of said month, as stated above. The affidavit of the sheriff which is appended to the State's reply to appellant's motion for new trial, sets out that appellant was confined in jail on a murder charge prior to the killing of the assistant jailer on September 26th, and that he was represented in said former murder case by counsel of his own choice. That the killing of Mr. Champion resulted from the use of two pistols which had been secretly smuggled into the jail, and that at once after said homicide investigation was set on foot by the Dallas county authorities with a view of ascertaining how said weapons got into the jail. Gaines was dead and the chief hope of finding the answer to said inquiry lay in appellant. Said affidavit states that appellant's attorney in the former case was acting for him and was negotiating with the State in an effort to secure an agreement on behalf of appellant that in return for information regarding the manner in which said weapons got into the jail, appellant's punishment in the instant case should be no more than life imprisonment. Said affidavit further states that when the attorney appointed to represent appellant in this case consulted the jailer with reference to seeing appellant in jail, the officer informed said attorney of the investigation which was then proceeding and told him what he was doing, and that it seemed agreeable to said attorney to delay seeing appellant in view of the facts stated.

In connection with the facts made apparent by said affidavit, our attention is also called to the proposition that following the consultation between appellant and said counsel on the 17th of October, an application was made for three witnesses, but all of them were present at the trial. Our Constitution guarantees to

every accused person the right to be heard by himself or counsel, or both. Sec. 10, Art. 1, Constitution of Texas. No complaint is made of any abridgment of this right at the time, or during the actual trial, nor was there request for postponement or continuance in order to have opportunity for such consultation.

As persuasive we are referred to Art. 558 of our C. C. P., which provides that counsel shall be appointed for accused persons in capital cases, but in said article it is stated as follows: "and the counsel so appointed shall have at least one day to prepare for trial." Arbitrary refusal to allow one accused of crime the right to confer with counsel would merit, and should receive, severe condemnation, and if on appeal such fact be shown and that a postponement or continuance for the purpose of such consultation was refused, we think the case should be sent back for another trial; but the reasons advanced in the showing made by the State in this case, seem to support the conclusion that the denial was not arbitrary and that appellant was in conference with an attorney of his own choosing who was seeking to perfect for him an advantageous settlement of his case, and who to this extent was representing his interests. We also appear bound by the further conclusion that nothing in the record suggests that from lack of conference with his attorney appointed herein prior to October 17th, injury may have resulted. The only witnesses desired were present. Appellant was in jail when this offense was committed, and remained there continuously up to his trial and in consequence could know nothing by personal investigation of the attitude of the jurors of the county, in order to aid his counsel in the matter of change of venue. The killing grew out of no complicated of protracted feud, business or domestic trouble, or personal enmity, requiring extended inquiries and explanations and frequent conferences.

From no angle of approach can we see possible injury reflected in this record from lack of earlier conference, and in such case, added to the fact that it is not clearly shown that the refusal was arbitrary, we do not believe we would be justified in holding that this case should be reversed for such refusal alone.

Finding no error in the record, an affirmance will be ordered.

*Affirmed.*

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—Upon motion for rehearing appellant again presents the same matters which were urged upon original submission, as grounds for reversal of the judgment. We advert to only one. When appellant's case was called for trial his attorney presented an application for continuance, based upon the absence of three witnesses. In explaining an apparent lack of diligence in not

having process for them issued earlier he states that he had been deprived of an opportunity to confer with his client and that process had been issued at as early a date as it was possible after he did have such conference. There was no general complaint urged in the ap-plication for continuance that appellant had not had sufficient time to prepare his case for trial by reason of being denied the privilege of conferring with his client. The reason given for the delay in issuing process for witnesses would have appealed strongly to this court if said witnesses had not been obtained; but that phase of the case is eliminated, because the witnesses were secured and were present in court at the time of trial, and were available to appel-lant if he desired to use them.

After the verdict was returned appellant filed a motion for new trial upon the ground, among others, that he was denied the priv-ilege of conferring with his counsel. It appears from the bill of exception complaining of the action of the court in overruling his motion that the case was set for trial on October 22d; that on the 8th of that month J. F. Wilson had been appointed by the district judge to represent appellant; that immediately notice was given to Wilson as to his appointment, and on the following day (October 9th) he called upon the sheriff and was refused permis-sion to see his client; that this request was repeated daily up to and including October 16th; that on the 17th he was given, for the first time, an opportunity to confer with appellant. In the mean-time on several occasions the attorney had appealed to the district judge and was advised by him that the privilege of conferring with his client would be accorded him. This statement is not contro-verted. The sheriff gives as his reason for denying the conference the fact that Judge Nelms had formerly represented appellant in a murder case upon which he was confined in jail at the time of the killing out of which this present prosecution grew, and that Judge Nelms was endeavoring to get appellant to give information relative to the smuggling of arms into the jail with which the killing of the jailor occurred, and was endeavoring to induce appellant to give this information with a view to lightening the punishment in the present case. It is not made to appear from the record that these ne-gotiations were by authority of any one in a position to offer appel-lant immunity or concessions of any kind. However, neither before the trial, nor at any time during its progress, was a motion pre-sented to the trial court to delay the case upon the ground that the denial of conference with appellant had rendered it impracticable for counsel to make the necessary preparations for trial save as it re-lated to the issuing of process for witnesses, which, as before stated, was unavailable because said witnesses were produced in court. The right of one accused of crime to confer with counsel and receive

instruction and advice in the preparation for trial is one of the rights guaranteed by the Bill of Rights embraced in our Constitution. Such is the holding in many decisions of this court, and they are in harmony with the courts of other states having like constitutional provisions. These principles and some of the decisions are adverted to in the opinion of this court in the case of Turner and Barton v. State, 91 Texas Crim. Rep., 627, 241 S. W., 162.

While the reasons actuating the sheriff in not giving opportunity for conference because of an effort on the part of the officers to ascertain who had smuggled the pistols into the jail may have appeared satisfactory to him, yet we believe they are entitled to no weight in passing upon appellant's right to confer with his attorney. The sheriff does not in his affidavit say that appellant's attorney agreed to the delay, but simply that he thought the delay was satisfactory to the attorney. If the sheriff was prosecuted under Article 1046, P. C., which declares it a criminal offense for an officer in custody of a prisoner to prevent his consultation or communication with his attorney, or obtain his advice or services in the protection of his legal rights, then the excuse given by the sheriff might be a matter which would be admissible in evidence in his favor to rebut the claim that his conduct was wilful, but it could not and ought not to have any bearing upon the rights of an accused if he has not otherwise waived the right to complain of the refusal of such conferences. Art. 558, C. C. P., provides for the appointment of an authority for one accused of crime, and says that counsel so appointed shall have at least one day to prepare for trial. We think it is not to be understood that this statement in the statute means that in all cases one day would be sufficient, but in view of that statute if counsel so appointed feels that additional time is necessary to make preparation for the trial he should before announcing ready make a demand for further time, and show the court his reasons for such requested delay. We are of opinion that complaint of the character now presented comes too late when urged for the first time in motion for new trial. It has then passed beyond the power of the court to correct the matter, which he might have done if called to his attention before trial. As we understand the record appellant urges that he is entitled to a reversal of the judgment upon the broad ground that the sheriff acted wrongfully in declining to permit him to confer with his counsel. If he is right about this then exactly the same point would be available if this alleged wrongful act had occurred six months before the trial of the case. While we are not unmindful that the severest penalty known to the law has been assessed against appellant, we are unable to agree with him that under the record now before us the matter which we have been discussing is a ground

upon which this court would be authorized to order a reversal of the judgment.

For the reasons stated the motion for rehearing is overruled.

*Overruled.*