STATE OF NORTH CAROLINA v. CHARLES G. HILL III

No. 63

(Filed 20 January 1971)

1. Arrest and Bail § 3— arrest without warrant — drunken driving — vehicle not operated in officer's presence

Arrest of defendant without a warrant for the offense of operating a motor vehicle on a public highway while under the influence of an intoxicant was illegal where defendant had not operated the vehicle in the arresting officer's presence. G.S. 15-41(1).

2. Arrest and Bail § 7— right to communicate with counsel and friends

A defendant's constitutional and statutory right to have communications and contacts with the outside world is not limited to receiving professional advice from his attorney, but he is also entitled to consult with friends and relatives and to have them make observations of his person. Amendment VI, U. S. Constitution; Art. I, § 23, N. C. Constitution; G.S. 15-47.

3. Arrest and Bail § 7— right of access to counsel and friends

The right to communicate with counsel and friends necessarily includes the right of access to them.

4. Arrest and Bail § 7; Constitutional Law § 30— defendant charged with drunken driving — constitutional and statutory rights

One who is detained by police officers under a charge of driving while under the influence of an intoxicant has the same constitutional and statutory rights as any other accused.

5. Arrest and Bail § 7; Constitutional Law § 31— defendant charged with drunken driving — necessity for immediate access to counsel and friends

If one accused of driving while intoxicated is to have witnesses for his defense, he must have access to his counsel, friends, relatives or some disinterested person within a relatively short time after his arrest, since intoxication does not last.

6. Arrest and Bail § 7— defendant charged with driving while intoxicated — right to have counsel and friends observe and examine him

The right of a defendant charged with driving while intoxicated to communicate with counsel and friends implies, at the very least, the right to have them see him, observe and examine him with reference to his alleged intoxication.

7. **Arrest and Bail § 7; Constitutional Law § 31— refusal of jailer to allow attorney-relative to see defendant charged with drunken driving — denial of right to communicate with counsel and friends**

Defendant charged with driving while intoxicated was denied his constitutional and statutory right to communicate with both counsel and friends at a time when the denial deprived him of any opportunity to confront the State's witnesses with other testimony, where (1) defendant was not "permitted" to telephone his attorney until after breathalyzer testing and photographic procedures were completed and the warrant was served; (2) defendant called his attorney, who was also his brother-in-law, to the jail; (3) the attorney's request to see his client and relative was peremptorily and categorically denied by the jailer; and (4) only law enforcement officers saw or had access to defendant from the time he was arrested about 11:00 p.m. until he was released about 7:00 a.m. the next morning.

8. **Constitutional Law § 31— defendant deprived of opportunity to obtain evidence by officer's blunder**

When an officer's blunder deprives a defendant of his only opportunity to obtain evidence which might prove his innocence, the State will not be heard to say that such evidence did not exist.

Justice Moore did not participate in the consideration or decision of this case.

Justice Huskins dissenting.

Justice Lake dissenting.

ON *certiorari* to review the decision of the Court of Appeals reported in 9 N.C. App. 279, 176 S.E. 2d 41, which found no error in the trial before *Johnston, J.,* at the 19 January 1970 Session of the Superior Court of Forsyth. Defendant appeals a conviction under G.S. 20-138.

Defendant was first tried in the Municipal Court of the City of Winston-Salem upon a charge that on or about 14 March 1968 he unlawfully operated a motor vehicle on a public street of Winston-Salem while under the influence of intoxicating liquor. Upon his conviction he appealed to the Superior Court. There, when the case was called for trial, defendant moved (1) that the prosecution be dismissed because he had been denied counsel at a critical stage of the proceedings; and (2) that a motion picture of him, together with its sound tract, and the results of a breathalyzer test be suppresesd because made while he was under illegal arrest. Judge Johnston conducted a *voir dire* and overruled both motions. The evidence adduced on *voir dire* will be discussed in the opinion.

State v. Hill

The State's evidence which was before the jury tended to show: At approximately 10:45 p.m. on 13 March 1968, W. E. Stroupe, accompanied by Wayne Stafford, was driving his automobile on Reynolda Road, a four-lane street in Winston-Salem. The weather was clear and the street well lighted. As Stroupe came over a hill he saw an unlighted Lincoln Continental approaching him from the opposite direction. The vehicle was swerving "broadside" from left to right. In an effort to avoid a collision Stroupe stopped his automobile at the right curb, but notwithstanding the approaching car struck it at the left front door. Defendant Hill appeared from the rear of his vehicle and said repeatedly, "I don't think I hit you, but if I did I am sorry." Stroupe testified that he was so incensed by the collision that he feared to get close to defendant. Therefore, he did not smell his breath, and he could not say how he walked. Wayne Stafford also testified that he did not observe Hill walk, smell his breath, or have any conversation with him.

At 10:47 p.m. Police Officer G. E. Tierney, Jr., arrived at the scene and began an investigation. Defendant told the officer "that he was operating the 1964 Lincoln Continental." According to Tierney's testimony: Defendant's speech was slow; he staggered; his face was red. The odor of alcohol was on his breath and, in his opinion, defendant was under the influence of an intoxicating beverage to the extent that his mental and physical faculties were appreciably impaired.

Although he had not seen defendant operate the motor vehicle Tierney arrested him for drunken driving. After advising him of his constitutional right to counsel and to remain silent, Tierney took defendant to the Forsyth County Jail.

Defendant was again advised of his rights at the jail. When asked if he wanted a lawyer he replied that he was all right and didn't need one. He was then "filmed," and his answers to "certain questions" were recorded. After that procedure defendant was asked if he would take the breathalyzer test. He consented, and the test was administered at approximately 11:45 p.m. It "indicated a reading between .23 and .24%." Immediately thereafter a warrant charging defendant with drunken driving was served upon him. The film, which was introduced in evidence, showed that defendant "sort of staggered and he was slow talking and his writing on the board was impaired."

Defendant offered no evidence before the jury. His motion for nonsuit was overruled. The jury returned a verdict of guilty as charged in the warrant, and from the judgment that he pay a fine of $100.00 and the costs defendant appealed. The Court of Appeals found no error in the trial, and we allowed *certiorari*.

*Attorney General Robert Morgan, Assistant Attorneys General William W. Melvin and T. Buie Costen for the State.*

*Craige, Brawley by Alvin A. Thomas and C. Thomas Ross for defendant appellant.*

SHARP, Justice.

Defendant assigns as error the court's denial of his pretrial motions. At the *voir dire* which Judge Johnston conducted upon these motions the evidence for the State tended to show: Officer Tierney, who arrested defendant at the scene of the collision, did not at any time see him drive his automobile. Defendant was taken to jail, filmed, and given the breathalyzer test before a warrant charging him with drunken driving was served upon him. While the film was being made, and during the breathalyzer test, only police officers and employees of the police department were present. As soon as these procedures had been accomplished Tierney permitted defendant to telephone his attorney, and he was present when defendant made the phone call.

Defendant testified: He was arrested about 10:30 p.m. and after his arrest he requested counsel. At no time did he say he did not want an attorney. He was "finally permitted to call a lawyer a little after midnight. . . . They only offered (him) the right to make a telephone call one time." He immediately called his attorney, William T. Graham, "and he was supposed to come down." Mr. Graham is defendant's brother-in-law and has represented him for the past eight years.

Mr. Graham testified that he received a telephone call from defendant a few minutes after midnight, and he talked to both him and Officer Tierney. The officer told Graham that defendant had been charged with drunken driving, and he could take him home if he would come to the jail. Mr. Graham went immediately to the jail, arranged defendant's bond, and requested the jailer, Deputy Sheriff Weldon Keyser, to release his client to him. The jailer refused because of "the four-hour rule." In

State v. Hill

response to Graham's request for an explanation of that rule, Keyser said, "Well we can't let the man out until he has been locked up for four hours." The attorney protested that defendant's bond had been posted and that the arresting officer had told him he could take defendant home. The jailer's reply was, "Well, I am running this jail and you are not going to get him out of here until the four hours are up." After Graham's further efforts, which included a call to Winston-Salem's Chief of Police, had failed to secure defendant's release on bond, he requested permission to see his client. The jailer's response was, "The son of a bitch is so drunk he can't stand up. . . . You are not going to see him, git." Graham "got, and that was the end of it." Defendant was released about 7:00 a.m. the following morning.

[1]   At the conclusion of the *voir dire*, Judge Johnston denied defendant's motion upon findings (a) that defendant was arrested without a warrant by an officer who had not seen him operating a motor vehicle on the occasion in question; (b) that defendant was not "arrested falsely"; (c) that defendant voluntarily submitted to the breathalyzer test and "was photographed by the police officers at that point"; and (d) that defendant was not at any time denied the right to counsel. Judge Johnston's finding that defendant was not "arrested falsely" was clearly intended to be a ruling that he was not illegally arrested. As such it was erroneous.

N. C. Gen. Stats. § 15-41 provides: "A peace officer may without warrant arrest a person:

"(1)   When the person to be arrested has committed a felony or misdemeanor *in the presence* of the officer, or when the officer has reasonable ground to believe that the person to be arrested has committed a felony or misdemeanor *in his presence*." (Emphasis added.)

All the State's evidence tends to show that when Officer Tierney arrived at the scene he had reasonable grounds to believe that defendant had committed the offense of operating a motor vehicle on a public highway while under the influence of an intoxicant. Notwithstanding, under G.S. 15-41 the arrest was illegal because defendant had not operated the vehicle in the officer's presence. "[T]he rule is that where the right and power of arrest without warrant is regulated by statute, an arrest without warrant except as authorized by statute is illegal."

*State v. Mobley,* 240 N.C. 476, 480, 83 S.E. 2d 100, 103. That defendant might have been legally arrested without a warrant for public drunkenness is beside the point; he was not arrested for that offense.

The Attorney General concedes that defendant's arrest was illegal. However, citing *State v. Moore,* 275 N.C. 141, 166 S.E. 2d 53, he contends that the illegal arrest did not *ipso facto* render the questioned evidence incompetent, since there were no oppressive circumstances surrounding the arrest. He argues that defendant voluntarily consented to the breathalyzer test and did not object to being photographed, and—since the sound motion picture was not made a part of the case on appeal—that the exception to its admission in evidence is not presented. These contentions are not without merit. However, because we base our decision upon the denial of defendant's motion to dismiss, we will not discuss further the motion to suppress evidence.

Both the state and federal constitutions declare that in *all* criminal prosecutions an accused has the right to have counsel for his defense and to obtain witnesses in his behalf. U. S. Const. amend. VI; N. C. Const. art. I § 23. In pertinent part the specific language of the North Carolina Constitution is that "every person charged with crime has the right . . . to confront the accusers and witnesses with other testimony and to have counsel for defense. . . . " To implement these constitutional rights the General Assembly enacted G.S. 15-47, which provides in pertinent part: "Upon the arrest, detention, or deprivation of the liberties of any person by an officer in this State with or without warrant, it shall be the duty of the officer making the arrest . . . to permit the person so arrested to communicate with counsel and friends *immediately, and the right of such person to communicate with counsel and friends shall not be denied.*"

[2, 3] Under these constitutional and statutory provisions a defendant's communication and contacts with the outside world are not limited to receiving professional advice from his attorney. He is, of course, entitled to counsel at every critical stage of the proceedings against him. *Gasque v. State,* 271 N.C. 323, 156 S.E. 2d 740. He is also entitled to consult with friends and relatives and to have them make observations of his person. The right to communicate with counsel and friends necessarily includes the right of access to them.

[4] Justice Higgins called attention to the provisions of G.S. 15-47, in *State v. Wheeler*, 249 N.C. 187, 192-193, 105 S.E. 2d 615, 620. He said: "The rights of communication go with the man into the jail, and reasonable opportunity to exercise them must be afforded by the restraining authorities. . . . The denial of an opportunity to exercise a right is a denial of the right." One who is detained by police officers under a charge of driving while under the influence of an intoxicant has the same constitutional and statutory rights as any other accused. *State v. Morris*, 275 N.C. 50, 165 S.E. 2d 245.

[7] All the evidence in this case tends to show (1) that defendant was not "permitted" to telephone his attorney until after the breathalyzer testing and photographic procedures were completed and the warrant was served; (2) that he called Mr. Graham, his attorney and brother-in-law, who came to the jail; (3) that Mr. Graham's request to see his client and relative was peremptorily and categatorically denied; and (4) that from the time defendant was arrested about 11:00 p.m. until he was released about 7:00 a.m. the following morning only law enforcement officers had seen or had access to him.

[5] When one is taken into police custody for an offense of which intoxication is an essential element, time is of the essence. Intoxication does not last. Ordinarily a drunken man will "sleep it off" in a few hours. Thus, if one accused of driving while intoxicated is to have witnesses for his defense, he must have access to his counsel, friends, relatives, or some disinterested person within a relatively short time after his arrest. The statute says he is entitled to communicate with them *immediately*, and this is true whether he is arrested at 2:00 in the morning or 2:00 in the afternoon.

[6] Defendant's guilt or innocence depends upon whether he was intoxicated at the time of his arrest. His condition then was the crucial and decisive fact to be proven. Permission to communicate with counsel and friends is of no avail if those who come to the jail in response to a prisoner's call are not permitted to see for themselves whether he is intoxicated. In this factual situation, the right of a defendant to communicate with counsel and friends implies, at the very least, the right to have them see him, observe and examine him, with reference to his alleged intoxication. The fact that Mr. Graham was defendant's lawyer,

as well as his friend, did not impair his right to observe defendant at this critical time.

[7] The evidence in this case will support no conclusion other than that defendant was denied his constitutional and statutory right to communicate with both counsel and friends at a time when the denial deprived him of any opportunity to confront the State's witnesses with other testimony. Under these circumstances, to say that the denial was not prejudicial is to assume that which is incapable of proof. Decisions from other jurisdictions, discussed below, support this conclusion.

*City of Tacoma v. Heater,* 67 Wash. 2d 733, 409 P. 2d 867, involved a situation practically identical with the one we consider. In that case the defendant was arrested for driving while intoxicated. Upon arrival at the jail he requested permission to telephone his attorney. His repeated requests were refused because police department regulations authorized officers to deny a person charged with an offense involving intoxication the right to use the telephone for four hours. The jury found the defendant guilty as charged.

In reviewing his conviction the Supreme Court of Washington said, "This issue to be determined on this appeal is: Is the denial of a request for permission to contact counsel as soon as a person is charged with a crime involving the element of intoxication, the denial of a constitutional right resulting in irreparable prejudice to his defense?" *Id.* at 735, 409 P. 2d at 869. In answering the question YES, the Court said that a critical stage had been reached in the defendant's case when, immediately after the officers had interrogated the defendant and conducted their test for sobriety, they charged him with the offense. The rationale was that the denial of counsel at this point made it impossible for defendant to have disinterested witnesses observe his condition and to obtain a blood test by a doctor—the only means by which defendant might have proved his innocence. "The evidence of intoxication dissipates with the passage of time. The 4-hour rule imposed by the police regulation recognizes that after 4 hours a person under the influence of intoxicating liquor will have reached a state of sobriety so that he is safe to be released, and may use a telephone. . . . It will not do to say that a person who is denied an opportunity to secure the most convincing kind of evidence has been deprived of a constitutional

right but that such deprivation did not harm him. . . . " *Id.* at 739, 740, 409 P. 2d at 871. "Under the 'critical stage' rule, the denial to the defendant of the assistance of his attorney after the officers had conducted their test and questioning, violated his constitutional right to have counsel and due process, and any conviction obtained thereafter was void." *Id.* at 741, 409 P. 2d at 872.

The opinion in *City of Tacoma* collects the pertinent decisions. We approve the Washington court's exposition and that of the Supreme Court of Appeals of Virginia in *Winston v. Commonwealth,* 188 Va. 386, 49 S.E. 2d 611, one of the cases cited in *Tacoma.* In *Winston,* the defendant was arrested for driving while intoxicated and jailed for nearly five hours before he was taken before a judicial officer authorized to issue warrants and fix bail. The applicable Virginia statute required that he be taken "forthwith." In reversing the defendant's conviction and dismissing the prosecution the Supreme Court of Appeals of Virginia pointed out that as a result of his illegal detention the defendant had been forever deprived of material evidence which *might* have supported his claim of innocence; that after the lapse of the time during which he was held in jail a physical examination and blood test would have been useless. The court said: "[W]here, as here, the effect of the failure of the arresting officer and of the custodian of the arrested person to perform their respective duties is such as to deprive a person of the constitutional right to call for evidence in his favor, his subsequent conviction lacks the required due process of law and cannot stand." *Id.* at 396, 49 S.E. 2d at 616.

[8] Before we could say that defendant was not prejudiced by the refusal of the jailer to permit his attorney to see him we would have to assume both the infallibility and credibility of the State's witnesses as well as the certitude of their tests. Even if the assumption be true in this case, it will not always be so. However, the rule we now formulate will be uniformly applicable hereafter. It may well be that here "the criminal is to go free because the constable blundered." *People v. Defore,* 242 N.Y. 13, 21, 150 N.E. 585, 587. Notwithstanding, when an officer's blunder deprives a defendant of his only opportunity to obtain evidence which might prove his innocence, the State will not be heard to say that such evidence did not exist. *In re Newbern,* 175 Cal. App. 2d 862, 1 Cal. Rptr. 80. Defendant has

been deprived of a fundamental right which the constitution guarantees to every person charged with crime. For that reason the prosecution against him must be dismissed.

Reversed.

Justice MOORE did not participate in the consideration or decision of this case.

Justice HUSKINS dissenting:

Defendant was convicted of drunken driving. Upon the facts in this record his guilt is so obvious that reasonable men, women or children could not arrive at a different conclusion. Therefore, unless his rights have been prejudicially violated, amounting to a denial of due process, his conviction should be sustained.

The record shows: (1) Officer Tierney arrived on the scene *two minutes* after defendant had driven his 1964 Lincoln Continental into the Stroupe vehicle, which Mr. Stroupe had stopped at the right curb on a *four-lane street* in an effort to avoid the collision; (2) defendant told the officer he was driving the Lincoln, a fact already known to Mr. Stroupe; (3) defendant's speech was slow, his face was red, the odor of alcohol was on his breath, he staggered when he walked—in short, he was drunk; (4) the officer arrested him without a warrant for drunken driving, advised him of his rights, took him to the Forsyth County Jail and again advised him of his rights, whereupon he stated that he was all right and didn't need a lawyer; (5) defendant then consented to take the Breathalyzer test and it "indicated a reading between .23% and .24%"; (6) immediately thereafter defendant was served with a warrant charging him with drunken driving; (7) a few minutes after midnight defendant telephoned his lawyer who went to the jail and arranged bond, but the jailer refused to release defendant until he sobered up and also refused to allow counsel to see defendant, stating that "the s.o.b. is so drunk he can't stand up"; (8) at his trial defendant did not testify and *offered no evidence;* (9) defendant makes no attack whatsoever on the accuracy of the Breathalyzer test and makes no contention that the test was improperly administered; (10) defendant contends, but does not reveal in what way, the failure to permit counsel to talk to him at midnight prejudiced his defense.

State v. Hill

On the facts outlined, I am unwilling to "let the criminal go free because the constable blundered." The determinative question is not whether defendant was denied access to his counsel at a critical stage of the proceeding against him. Rather, the question is whether denial of temporary access to counsel prejudiced this defendant in the preparation and trial of his case? *Coleman v. Alabama,* 399 U.S. 1, 26 L. Ed. 2d 387, 90 S.Ct. 1999 (1970). I say not. Admittedly, defendant's constitutional right to counsel was violated by an arrogant, overbearing jailer whose discharge might well serve the orderly administration of criminal justice. Even so, every violation of a constitutional right is not prejudicial. Some constitutional errors are deemed harmless in the setting of a particular case, not requiring the automatic reversal of a conviction, when the court can declare a belief that it was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 17 L. Ed. 2d 705, 87 S.Ct. 824 (1967) ; *Harrington v. California,* 395 U.S. 250, 23 L. Ed. 2d 284, 89 S.Ct. 1726 (1969) ; *Coleman v. Alabama, supra; State v. Brinson,* 277 N.C. 286, 177 S.E. 2d 398 (1970). See: Note, Harmless Constitutional Error: A Reappraisal, 83 Harv. L. Rev. 814 (1970).

In fashioning a harmless error rule in *Chapman,* the Court said: "We prefer the approach of this Court in deciding what was harmless error in our recent case of *Fahy v. Connecticut,* 375 U.S. 85, 11 L. Ed. 2d 171, 84 S.Ct. 229. There we said: 'The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.' " In *Coleman v. Alabama, supra,* defendant was not provided counsel at his preliminary hearing and, in remanding the case to the state court to determine whether defendant had been prejudiced by the absence of counsel, the Court said: "The test to be applied is whether the denial of counsel at the preliminary hearing was harmless error under *Chapman v. California. . . .* " Applying that test to the facts in this case, I see no *reasonable possibility* that temporary exclusion of defendant's counsel on the night in question could have contributed even remotely to his conviction. Under statutory law of this State, .10% alcoholic content in the blood raises a legal presumption that the person is under the influence of intoxicants. G.S. 20-139.1. Here, in the face of an unchallenged Breathalyzer reading of .23% to .24% alcoholic content in defendant's blood, corroborated by slow speech, a red face, alcoholic breath and a staggered gait, it

is not perceived how denial of access to "midnight counsel" was prejudicial in the slightest degree. He had access to counsel from 7 a.m. the following morning until his trial was completed in Forsyth Superior Court in January 1970—twenty-two months later! Had his lawyer been admitted, he would have seen only a client with a red face, a thick tongue, smelling of alcohol, too drunk to stand, and probably half asleep. Had his lawyer called a doctor and other witnesses, their eyes would have fallen upon the same cheerful sight. How, then, did the jailer's blunder deprive this defendant of "his only opportunity to obtain evidence which might prove his *innocence?*" (Emphasis ours) The truth is, it did not. I believe it was harmless beyond a reasonable doubt, and defendant's conviction should stand. Where an officer's conduct does not adversely affect the outcome of a trial and does not result in a miscarriage of justice, courts should not reverse just to penalize erring authorities.

In the following cases, even though the defendant's right to consult with his counsel had been delayed or denied, the appellate court held that in the absence of evidence that such misconduct on the part of the authorities adversely affected the outcome of the trial or resulted in a miscarriage of justice, defendant's conviction should stand: *Welk v. State,* 99 Tex. Crim. 235, 265 S.W. 914 (1924) ; *Ellis v. State,* 149 Tex. Crim. 583, 197 S.W. 2d 351 (1946) ; *Sims v. State,* 194 Ark. 702, 109 S.W. 2d 668 (1937) ; *Guerin v. Commonwealth,* 339 Mass. 731, 162 N.E. 2d 38 (1959). Accord: *Coleman v. Alabama, supra; Vanater v. Boles, Warden,* 377 F. 2d 898 (1967) ; *State v. Youngblood,* 217 So. 2d 98 (Fla. 1968). See Annotation: Right to Counsel—Communication, 5 A.L.R. 3d 1360 (1966).

It is significant that after defendant had freely consulted with his counsel for twenty-two months, and after he and his counsel had heard the State's evidence during the trial, defendant has never claimed that he did, in fact, have a defense to the charge against him, or that, had he been permitted to see his counsel on the night of his arrest, he could have presented evidence tending to prove his innocence. He just elected to try the jailer instead.

"The basic purpose of a trial is the determination of truth. . . . " *Tehan v. Shott,* 382 U.S. 406, 15 L. Ed. 2d 453, 86 S.Ct. 459 (1966). The truth has been determined in this case by the verdict of the jury. Yet the majority permits defendant to use the Constitution not as a shield against injustice but as

a sword to avoid the penalty of the law. Such rigid application of constitutional principles is inappropriate in this instance and encourages the vicious habit of drunken driving which has become all too prevalent throughout the State. "There is danger that the criminal law will be brought into contempt—that discredit will even touch the great immunities assured by the Fourteenth Amendment—if gossamer possibilities of prejudice to a defendant are to nullify a sentence pronounced by a court of competent jurisdiction in obedience to local law, and set the guilty free." *Snyder v. Massachusetts,* 291 U.S. 97, 78 L. Ed. 674, 54 S.Ct. 330, 90 A.L.R. 575 (1934).

For these reasons I respectfully dissent from the majority view and vote to affirm the well-reasoned opinion of Chief Judge Mallard in the Court of Appeals upholding defendant's conviction.

Justice LAKE dissenting:

In my view the defendant's constitutional right to counsel has not been violated. At the time his lawyer was at the jail, no police interrogation of the defendant was in progress or contemplated. No such interrogation followed. This distinguishes the present case from *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L. Ed. 2d 977. No lineup for identification, no legal proceeding, such as a preliminary hearing, or other step in the prosecution was being conducted or in preparation. The attorney was not denied access to any such proceeding. I am aware of no previous decision of this Court or of the Supreme Court of the United States which extends the constitutional right of counsel to the right of unlimited jail visitation by counsel at 2 o'clock in the morning, irrespective of the desires of other inmates of the jail to sleep. The defendant was released some five or six hours later.

What this defendant lost by the act of the jailer was not the opportunity for legal advice or counselling but the opportunity to be inspected by a person, not part of the law enforcement personnel, during the period when his drunkenness or sobriety could most readily be determined. For this purpose, a doctor, minister, plumber or school teacher would have served as well as a lawyer. The jailer's denial of such inspection has nothing to do with the constitutional right to counsel. I am aware of no previous decision by this Court or by the Supreme Court

of the United States extending the Fourteenth Amendment, or any other provision of the Federal or State Constitution, so far as to require a drunk driver to be set free, and rendered immune to prosecution for his offense, merely because a rude and unaccommodating jailer denied some friend or relative the right to visit his jail cell at 2 a.m. to smell his breath.

This defendant was permitted to telephone his lawyer and did so. Had the lawyer, as a result of that conversation, believed that the defendant was as sober as a judge ought to be and was being framed by the police and the other driver in an automobile accident, it is obvious that, when the jailer denied the lawyer the opportunity to see him, the telephones of the solicitor, the chief of police or sheriff and the mayor would have been immediately and insistently ringing. No such suggestion appears in this record. This record leaves no reasonable doubt but that the defendant was exceedingly drunk. It is clear that, as the opinion of Justice Huskins demonstrates, his defense at his trial was not prejudiced by the inability of his lawyer to confer with him in the jail.