**UNITED STATES of America,
Appellant,**

v.

**John J. CANANE, Appellee.**

**No. B–CR–85–95.**

United States District Court,
W.D. North Carolina,
Bryson City Division.

Nov. 27, 1985.

R. Phillip Haire, Sylva, N.C., for appellee John J. Canane.

Charles R. Brewer, U.S. Atty., W.D.N.C. (Asst. U.S. Atty. Jerry W. Miller), Asheville, N.C., for appellant U.S. of America.

## MEMORANDUM OF OPINION AND ORDER

SENTELLE, District Judge.

THIS MATTER is before the Court on the appeal by the United States from the opinion of the Honorable J. Toliver Davis, United States Magistrate, entered on the 30th day of July, 1985. The facts found by the magistrate indicate that defendant was stopped by an officer of the Cherokee Indian Police Department at or about 3:35 a.m. on the morning of April 6, 1985 and given field sobriety tests by the officer. The officer thereafter placed the defendant under arrest and transported him to the Swain County Jail where a breathalyzer test was administered showing a blood alcohol content of .12 per cent. The complaint in this case charges the defendant with operating a motor vehicle while under the influence of an impairing substance in violation of Title 18, United States Code, Section 13 assimilating North Carolina General Statutes Section 20–138.1.

Defendant was offered the opportunity to have someone present on his behalf to observe the administration of the breathalyzer test and declined but after the test requested permission to telephone his father. This permission was granted and the defendant called his father to ask him to come to the jail and post bail. On coming to the jail prepared to post $500.00 cash bail which defendant had been incorrectly advised has been set, the father was advised by a jail official that no magistrate was available, bond had not been set and the father could not put up the bail or obtain his son's release until the magistrate came in at 9:00 a.m. that morning. At that time (approximately 4:30–4:35 a.m.), the father requested permission to see his son. Permission was denied and he was told that his son was "upstairs and that he wasn't available and that I could see him when I got him out at 9:00 in the morning."

Upon defendant's motion for dismissal the magistrate dismissed this cause, relying on *State v. Hill*, 277 N.C. 547, 178 S.E.2d 462 (1971). In that case the defendant was arrested for driving under the influence and taken into police custody. His brother-in-law, an attorney, arrived shortly after the breathalyzer test and asked permission to see the defendant. As in the case at bar this permission was de-

nied. The North Carolina Supreme Court held in that case that, "(The defendant) is also entitled to consult with friends and relatives and to have them make observations of his person. The right to communicate with counsel and friends necessarily includes the right of access to them." It further held that:

"When one is taken into police custody for an offense of which intoxication is an essential element, time is of the essence. Intoxication does not last. Ordinarily a drunken man will 'sleep it off' in a few hours. Thus, if one accused of driving while intoxicated is to have witnesses for his defense, he must have access to his counsel, friends, relatives, or some disinterested person within a relatively short time after his arrest. The statute says he is entitled to communicate with them *immediately,* and this is true whether he is arrested at 2:00 in the morning or 2:00 in the afternoon.

"Defendant's guilt or innocence depends upon whether he was intoxicated at the time of his arrest. His condition was then the crucial and decisive fact to be proven. Permission to communicate with counsel and friends is of no avail if those who come to the jail in response to a prisoner's call are not permitted to see for themselves whether he is intoxicated. In this factual situation, the right of a defendant to communicate with counsel and friends implies, at the very least, the right to have them see him, observe and examine him, with reference to his alleged intoxication."

The magistrate applied *State v. Hill* and ordered the case dismissed. In seeking to overturn that decision the United States argues that the magistrate improperly applied state rather than federal procedure and asserted three (3) alleged distinctions between *Hill* and the case at bar:

(a) In *Hill,* the defendant was illegally arrested. The arrest here was entirely legal.

(b) In *Hill,* the defendant was held in custody away from his attorney after bond had been set and posted. Here,

the defendant was released the moment a magistrate was available.

(c) In *Hill,* the court found that the defendant had been denied access to friends and relatives who might witness his condition. Here, the defendant was specifically given the opportunity to have witnesses examine his condition and observe the breathalyzer test and the defendant told the officers that he wanted no other witnesses present.

A review of the *Hill* decision and the record in the present case reveals that the alleged distinctions found in paragraphs (a) and (c) are inapposite. The decision in *Hill* in no way turned on the illegality of the arrest. The distinction in paragraph (c) simply does not exist. The defendant in *Hill,* as the defendant in the instant case, was given the opportunity to have witnesses examine his condition and observe the breathalyzer test and asked for none.

▆ The distinction in paragraph (b) is that the defendant in *Hill* was concededly in custody after the posting of bail while in the present matter bond had never been set because of the unavailability of the magistrate and defendant was released as soon as a magistrate was available. However, this court does not find that distinction to be controlling. Rather it seems to the court that the most important distinction here is that involving the differing state and federal procedure. The *Hill* case was a state prosecution for violation of the North Carolina Drunk Driving Statute. Canane is charged not with a violation of North Carolina law but of Title 18, United States Code, Section 13. While this section adopts the substantive law of the state, the procedural law of the United States remains binding. *Kay v. United States,* 255 F.2d 476 (4th Cir.1958). The statutes cited by the North Carolina Supreme Court as creating the right protected in the *Hill* decision are statutes of criminal procedure and not statutes affecting the substantive definition of an offense. (*Cf. Kay v. United States, supra* at 479.) However, this holding is not dispositive of the case. The

question becomes then one of federal law and could be restated: Was the defendant brought before a magistrate without undue delay:

"Words 'without unreasonable delay,' as used in federal rule (sic) of criminal procedure that person accused of violation of federal law shall be taken without unreasonable delay before commissioner empowered to commit such persons does not mean 'instantly,' but means 'as quickly as possible,' which means as quickly as possible after certain matters, such as 'booking' of suspect, quick verification through third parties of 'story' volunteered by accused, and search of accused, have been attended to." *Muldrow v. United States*, 281 F.2d 903 (9th Cir.1960) (citations omitted).

or, on the other hand, did the detention of the defendant incommunicado deprive him of constitutional rights:

"On the basis of *Webb*, both the third and the sixth circuits have stated that they would not require a finding of prejudice in order to reverse a conviction because of this type of due process violation." *United States v. Hammond*, 598 F.2d 1008 (5th Cir.1979) (citations omitted).

On this question the decision in *Hill, supra*, while not binding, is persuasive. As stated by the court in *Hill:*

" 'The evidence of intoxication dissipates with the passage of time ... It will not do to say that a person who is denied an opportunity to secure the most convincing kind of evidence has been deprived of a constitutional right but that such deprivation did not harm him.' " (Citations omitted.)

That analysis is more compelling on the facts of the case at bar than in *Hill*. In *Hill* defendant conceded the breathalyzer reading was between .23 and .24: twice the level in the instant case.

▮ It is not sufficient to say that the defendant's breathalyzer reading is high enough in the instant case to convict him because it is now impossible to say what other evidence might be available to rebut the presumption created by North Carolina General Statute 20–138.1 because of the deprivation of contact of which the defendant now complains.

The court notes that delays created in the holding of a defendant are viewed not only as to their length but as to the use of the time. Had the record contained some development of the reasons for the unavailability of a magistrate to set bond and/or the reasons why the father could not see the son at the jail a dismissal might not have been warranted. Unfortunately, this evidence was not developed for the record.

Therefore, while this court holds that *State v. Hill* is not binding upon federal officials applying Title 18, United States Code, Section 13, this court nonetheless finds the logic of *State v. Hill* to be compelling and the decision of the magistrate dismissing this prosecution is affirmed.

Accordingly, the prosecution is DISMISSED.