The land for which the action was brought, was granted to John Hardy in 1717; and by his will, dated in 1719, duly executed to pass lands, was devised to his daughter Elizabeth Hardy in tail. The lessor of the plaintiff, to prove that she was the issue in tail, called one Hardy as a witness, who (48) produced a book in manuscript, which, he said, was the parish register; and he turned to the following entries made therein, to-wit:
"Nathaniel Hill and Elizabeth Hardy married by the Reverend Mr. Newmans." The date omitted.
"Michael Hill, son of Nathaniel and Elizabeth Hill, born 20 October, 1726."
"Hardy Hill, son of Michael Hill and Elizabeth Hill, born 21 February, 1756."
"Elizabeth Hill, daughter of Hardy Hill and Jennett Hill, born 18 January, 1776."
"Hardy Hill died 5 September, 1777."
"Jonathan Jacocks and Elizabeth Hill married 17 March, 1791."
The witness deposed, that the first and second entries were made in a hand-writing unknown to him; the third he believed to be in the hand-writing of Edward Raynor, deceased, former clerk. The other entries were made by himself. He further deposed that Jonathan Jacocks died in 1810. The lessor of the Plaintiff relied on these entries to prove her pedigree, and that she was the issue in tail; and, also, that the several tenants were within the savings of the statute of limitations. The Defendant contended that this book was not admissible in evidence, and, if admissible, that it was insufficient to prove the pedigree, or that the tenants were within the savings of the statute.
It appeared in evidence that Michael Hill, on 5 May, 1748, conveyed in fee the land in question to John Hill for a valuable consideration; and the Defendant deduced title regularly from John Hill to himself. It was admitted that real assets descended from Michael Hill to his issue in tail, Hardy Hill, father of the lessor of the Plaintiff, of greater value than the land in question. And it was contended that the warranty in the deed from Michael Hill to John Hill, and the real assets descended to the issue in tail of Michael Hill, worked a discontinuance of the estate tail. The deed contained a covenant of seisin, and the clause of warranty was in the following (49) words: "Furthermore, I, the said Michael Hill, for myself, my heirs, executors and administrators, do covenant *Page 43 
and engage the above demised premises to him the said John Hill, his heirs and assigns, against the lawful claims or demands of any person or persons, whatsoever forever hereafter to warrant, secure and defend."
At this term, the Court gave judgment upon the points submitted in this case. They agreed upon the first point, that the parish register was properly admitted in evidence, and if the jury believed the evidence of Hardy, this register, with his testimony, proved the pedigree of the lessor of the plaintiff, (52) and that she was the issue in tail; and also that the several tenants were within the savings of the statute of limitations. On the second point, the Court were divided in opinion; the Chief-Justice and Judge Hall being of opinion that the covenant in the deed from Michael Hill to John Hill was a covenant for quiet enjoyment only; and Judge Daniel, that the covenant was a covenant real, annexed to the land, and by reason of the real assets of greater value than the land in question, descended to the issue in tail, had worked a discontinuance of the estate tail.
The two questions presented by the record are, as to the admissibility of the book in evidence; and, whether the deed from Michael to John Hill operated a discontinuance of the estate tail.
1. The registry of births, marriages and burials, is directed to be kept by the register of the precinct, where there is no clerk, by the act of 1715: and as the book produced was proved to be the original one which had been thus kept, it affords legal evidence of the marriages and births, at least on a question of pedigree. A book kept by public authority, is necessarily evidence of the facts recorded in it, for the convenience of the public. (1 Salk., 282.) And the law will guard (53) the purity of such a memorial by making it indictable to insert a false entry. (Sid., 71-2.) It is very possible to prove a marriage or pedigree by general reputation; but where precision is required in dates, it is extremely difficult to arrive at it, more especially in a country and climate, where from various causes, the population undergoes frequent changes.
The registry book, confirmed as it was in this case, by proof of its authenticity, afforded to the jury a simple and satisfactory method of tracing the pedigree for nearly a century; and excluded all that doubt, confusion and uncertainty, which *Page 44 
usually hang over such investigations, when depending upon the memory of witnesses. It would tend greatly to the public advantage, if the directions of the act of 1715, on this subject, were generally observed.
2. The other question is not free from difficulty; but after mature reflection upon it, the decided preponderance of our judgment is, that the covenant contained in the deed of Michael Hill did not discontinue the estate of the heir in tail. The law has made a clear distinction between a covenant real and a covenant personal; and to a warranty alone, in the original and proper sense of the term, has it imparted the effect of intercepting the descent to the heir; because he and not the executor is bound to warrant and secure the land to the covenantee and his heirs. The use and adoption of the form in which the ancient warranty is expressed, would indicate the intention of the parties to avail themselves of such remedies as appertain to the warranty only; and the change of that form will justify the reasonable inference that they designed to abide by the security which is afforded by a covenant. A general warranty extends to all mankind: the usual covenant is only for the acts of the grantor and his ancestors: but a covenant will bind the personal assets, which makes such security better than a warranty. (2 Bl. Com., 304.) The various covenants contained in this deed further shew that the parties meant to rely upon the (54) modern covenants; for all are contained in it, except that for further assurance, which there were no means of the tenant in tail giving. It is then right that the purchaser should have the full benefit of the remedies which the deed furnishes; but we can find no authority for the Court to superadd to a covenant which is clearly personal, the remedy by rebutter, which exclusively belongs to that real covenant which is called a warranty. The words which bind the executors and administrators of Michael Hill, must be rejected, before this can be done, or the clause be construed as a warranty. That would be altering the contract of the parties, and, as it appears to us, frustrating their intention. The words in this deed are similar to those in Williamsonv. Codrington, (I Ves. 512,) where it was held by Lord Hardwicke that if a person obliged himself, his heirs, executors and administrators to warrant and forever defend the lands, negroes, cattle, and stock conveyed, it amounted to a covenant, and not to a warranty. (3 Cruise, 65.)
The disuse of real actions has from necessity, given the warrantee a right to bring an action of covenant, in which he recovers damages according to the value of the land at the time *Page 45 
the warranty was entered into. If he could not bring this action, he would be without any remedy; but the same necessity does not exist for rebutting the heir; because if the ancestor left real or personal assets, the purchaser may be recompensed. Our opinion consequently is, that this warranty did not descend upon the heir; and that John Hill had nothing more than a bare fee simple, determinable on the death of Michael Hill, by the entry of his issue in tail; and that the Plaintiff is entitled to judgment.