## STATE OF NORTH CAROLINA v. SYLVESTER JOYNER

No. 3

(Filed 8 May 1978)

1. **Constitutional Law § 28— motion to dismiss—alleged violation of constitutional rights in obtaining confession**

    The trial court did not err in the denial of defendant's motion under G.S. 15A-954(a)(4) to dismiss the charges against him because of alleged violations of his constitutional rights in obtaining a confession where the evidence on voir dire, though conflicting, supported the court's findings that defendant was advised of his rights, that he waived his right to have an attorney present, and that his confession was made voluntarily and freely.

2. **Constitutional Law § 28— motion to dismiss—violation of constitutional rights—prejudice to case preparation**

    It is only when one can show that there has been a constitutional violation resulting in irreparable prejudice to the preparation of his case that a dismissal is warranted under G.S. 15A-954(a)(4).

3. **Constitutional Law § 28— motion to dismiss—alleged violation of constitutional rights—absence of specific order**

    The trial court did not err in failing to enter a specific order denying defendant's motion to dismiss under G.S. 15A-954(a)(4) because of alleged violations of his constitutional rights in obtaining a confession where the trial court did find facts and enter conclusions of law in denying defendant's motion to suppress evidence of the confession, and by denying the motion to suppress, the motion to dismiss was denied *ipso facto*.

4. **Rape § 5— age of defendant—public record of birth**

    The State sufficiently proved that a defendant on trial for first degree rape was more than sixteen years of age at the time of the crime where it introduced into evidence the certificate of birth record in the office of the Register of Deeds which showed that defendant was over nineteen years of age at the time of the offense.

**5. Criminal Law §§ 72, 80— public record of birth—admissibility to show age**

A certificate of birth which was an original public record and which was properly authenticated by the Register of Deeds who was the official custodian thereof was admissible into evidence, and the information contained in the document was competent evidence of the facts recorded, *viz*, the date of defendant's birth.

**6. Robbery § 1.1— armed robbery—victim's fear irrelevant**

The question in an armed robbery case is whether a person's life was in fact endangered or threatened by defendant's possession, use or threatened use of a dangerous weapon, not whether the victim was scared or in fear of his life.

**7. Robbery § 4.3— continuing threat of use of firearm**

Though defendant did not actually point a gun at the victim at the time she gave her ring to defendant's accomplice, where the State's evidence did tend to show that prior to the robbery of the ring a pistol had been pointed at the heads of the victim and her three-year-old daughter to force the victim to engage in sexual acts with defendant and his accomplices, and it had been made clear to the victim on several occasions prior to the taking of the ring that the pistol would be used against her if she failed to comply, the evidence was sufficient to show that the ring was taken from the victim by the "threatened use" of a firearm which "endangered or threatened" her life within the meaning of the armed robbery statute since the evidence showed that the victim was placed under a continuing threat with a firearm which extended to every subsequent act by her.

**8. Assault and Battery § 14.3— thrusting drink bottle in rectum—deadly weapon—serious injury**

There was sufficient evidence that a soft drink bottle, as used, was a deadly weapon and that the victim suffered serious bodily injury so as to support the court's submission to the jury of a charge of assault with a deadly weapon inflicting serious bodily injury where the State's evidence tended to show that the victim, a lone woman attacked by five males, was held down by defendant while an accomplice thrust a bottle into her rectum with such force as to cause excessive bleeding, dilation of the rectum, and the infliction of multiple cuts, some deep and long, about the rectum, and that the victim was examined by two physicians and had to visit a physician regularly for some two months thereafter for treatment.

**9. Crime Against Nature §§ 1, 3— crime against nature—inclusion of cunnilingus**

The crime against nature is not limited to penetration by the male sexual organ, and the State's evidence was sufficient to support defendant's conviction of the crime against nature where it tended to show that defendant penetrated the victim's female sexual organ with his tongue.

APPEAL by defendant from judgments entered by *Martin (Harry), J.*, at the 6 June 1977 Criminal Session of PITT Superior Court.

State v. Joyner

Defendant was tried and convicted upon bills of indictment, proper in form, of first degree rape, first degree burglary, armed robbery, assault with a deadly weapon inflicting serious injury, and crime against nature. The charges of first degree rape and first degree burglary were consolidated for judgment and defendant was sentenced to imprisonment for life. The armed robbery, assault, and crime against nature charges were consolidated for judgment and defendant was sentenced to a term of twenty years imprisonment, this sentence to take effect at the expiration of the life sentence imposed on the burglary and rape charges.

Defendant appealed to this Court from the sentence of life imprisonment, and defendant's convictions of armed robbery, assault, and crime against nature were certified for initial appellate review by this Court pursuant to G.S. 7A-31(a).

The facts in this case may be summarized as follows:

On the evening of 11 January 1977 Carolyn Lincoln was at home with her three-year-old daughter in rural Pitt County near Greenville. At about 7:00 p.m. she went to her front door in response to a knock. She asked who was there, and thought she heard a man say, "Red". Thinking this to be her next-door neighbor, she unlocked and opened the door. A black male, unknown to her, jerked open the screen door and pushed his way into her home. Ms. Lincoln attempted to get a .22-caliber pistol from atop her dresser, but before she could reach it a second man, identified as defendant, came through the door and knocked her down. Three other black males then entered the house. Ms. Lincoln was dragged screaming into the kitchen. Her clothes were torn off and the defendant proceeded to rape her. Thereafter, Ms. Lincoln was raped twice by each of the five men, and, additionally, was forced, at gunpoint, to engage in unnatural sexual acts with the men. At one point the defendant dragged Ms. Lincoln's daughter into the kitchen and held a gun to the child's head, telling Ms. Lincoln that if she did not do what the men ordered he would shoot her daughter. One of the men then took a Pepsi-Cola bottle and, while defendant held Ms. Lincoln by her leg, forced the bottle into her rectum.

We see nothing to be gained by describing in detail the acts of defendant and his companions. Suffice it to say that their conduct was savage, inhuman, degrading, and revolting. Defendant

admitted to the officers: "I raped her by having sexual intercourse with her while holding her down and against her will. Alton Ray Curman stuck a soft drink bottle in her rectum. I do not know for sure how far he stuck the bottle in her."

After a half hour of such treatment, the defendant told Ms. Lincoln that the men were going to leave, and ordered her to lie still. One of the men then noticed her diamond ring and unsuccessfully attempted to wrench it from her finger, whereupon Ms. Lincoln took the ring off and handed it to him. She was then dragged across the floor by two of the assailants, one of whom said he was going to take her with them. She started struggling with the men at the front door, at which time she was hit over the back of the head and knocked unconscious. On regaining consciousness, Ms. Lincoln discovered that the men had left. She found her child cowering behind a chair. She took the child with her to a neighbor's house and called the sheriff. When the officers arrived at Ms. Lincoln's home, they found the house to be in disarray, the telephone wires pulled from the receiver, and her clothes scattered around on the floor. A large pool of blood was found on the floor and there was evidence showing that the screen door had been forced open. Ms. Lincoln had blood over a large part of her body.

Ms. Lincoln lost a great deal of blood due to the injuries inflicted on her by her assailants. Dr. G. Howard Satterfield examined her after the crime, and testified that she had severe bruises and abrasions on her neck, thighs and knees. Her labia were swollen about twice the normal size and were severely cut. There were multiple cuts and bleeding around her rectum, and the rectum itself was grossly distended.

Defendant was arrested around 4:00 a.m. the following morning. At that time his trousers were bloodstained, and the diamond ring and .22-caliber pistol belonging to Ms. Lincoln were found in a green field jacket lying on the floor beside him. Shortly thereafter defendant confessed to his participation in the rape of and other crimes against Ms. Lincoln.

The defendant offered no evidence.

Other facts relevant to the case will be set forth in the opinion.

*Attorney General Rufus L. Edmisten by Assistant Attorney General Thomas B. Wood for the State.*

*David T. Greer for defendant appellant.*

MOORE, Justice.

[1] By his first assignment of error defendant alleges that the trial court committed error in failing to grant defendant's motion under G.S. 15A-954(a)(4) to dismiss the charges against the defendant. G.S. 15A-954(a) provides:

> "The court on motion of the defendant must dismiss the charges stated in a criminal pleading if it determines that:

> \*   \*   \*

> "(4) The defendant's constitutional rights have been flagrantly violated and there is such irreparable prejudice to the defendant's preparation of his case that there is no remedy but to dismiss the prosecution."

The provisions of G.S. 15A-954(a)(4) were intended to embody the holding of this Court in *State v. Hill*, 277 N.C. 547, 178 S.E. 2d 462 (1971). *See* Official Commentary to G.S. 15A-954. As is indicated in the Official Commentary, since the provision contemplates drastic relief, a motion to dismiss under its terms should be granted sparingly.

In *State v. Hill, supra*, the Court indicated that dismissal of charges of operating a vehicle under the influence of intoxicating liquor was appropriate where the evidence showed that the defendant was denied the right to confer with counsel and have witnesses present after his arrest. The Court held that, since defendant was categorically denied the right to have anyone see him and observe his actions after his arrest, the defendant was deprived of his only opportunity to obtain evidence which might prove his innocence.

In the present case we have a different situation. There has been no showing that defendant's rights were violated. In a *voir dire* hearing on defendant's motion to suppress evidence of a confession and on his motion to dismiss under G.S. 15A-954(a)(4), the State offered extensive evidence showing that shortly after arrest defendant was read his constitutional rights in accordance

with Miranda requirements, and that the defendant stated he understood his rights and did not want a lawyer during interrogation. He signed a written waiver of rights, and this, along with a second written waiver stemming from a second interrogation several hours later, was introduced into evidence. Officers further testified that the defendant did not appear to be under the influence of drugs or alcohol. Defendant testified during *voir dire* that he was not read his rights, that he had signed nothing, that he repeatedly told officers he wanted a lawyer, that he had not slept the evening before his arrest and interrogation, and that he had been drinking wine and gin and smoking marijuana on the day he was arrested. Following the *voir dire*, the court found facts, among these being the finding that defendant had been informed of his rights, that he had waived these rights, and that defendant had expressly waived his right to have an attorney present. The court therefore concluded that defendant's statements to officers at both interrogations were freely and voluntarily made, and that his confessions were admissible into evidence.

As this Court said in *State v. Blackmon*, 280 N.C. 42, 185 S.E. 2d 123 (1971): "The conflict in testimony on the *voir dire* raised a question of credibility of the witnesses, which was for the determination of the trial court. His findings of fact, supported by competent evidence, are conclusive. *State v. McRae*, 276 N.C. 308, 172 S.E. 2d 37 (1970); *State v. Gray*, 268 N.C. 69, 150 S.E. 2d 1 (1966) . . . ." There was ample oral and written evidence in present case to support the judge's findings that defendant had been informed of his rights, and had waived these rights. These findings are conclusive. *State v. Blackmon, supra.*

[2] Unlike *State v. Hill, supra*, where the evidence showed that defendant had been denied his right to have counsel or anyone else present, the findings in present case indicate that defendant was afforded such rights but did not exercise them. The trial court therefore correctly denied defendant's motion to dismiss the prosecution, for his constitutional rights were *not* violated. It is only when one can show that there has been a constitutional violation resulting in irreparable prejudice to the preparation of his case that a dismissal is warranted under G.S. 15A-954(a)(4). Defendant has neither argued nor implied that his opportunity to

obtain evidence was in any way impaired by the facts surrounding his interrogation.

[3] Equally without merit is defendant's further contention that the court erred in failing to find facts and enter conclusions of law, and in failing to enter a specific order denying defendant's motion to dismiss under G.S. 15A-954(a)(4). The trial court actually did find facts and enter conclusions of law in denying defendant's motion to suppress evidence of defendant's confessions to police. By so denying the motion to suppress, the motion to dismiss was denied, *ipso facto*, for there was no showing of a constitutional violation by defendant upon which to base the motion. Thus the failure of the trial judge to enter an additional order specifically denying by name the motion to dismiss would be, at most, harmless error.

[4] Under his next assignment of error defendant argues that the trial court erred in failing to dismiss the charge of first degree rape against defendant. This argument is based on the contention that the State did not sufficiently prove one of the elements of the crime, namely, that defendant was more than sixteen years of age. At trial the Register of Deeds of Pitt County, Elvira T. Allred, testified that Volume 43 of the Vital Statistics—Birth Records, which was under her supervision, contained at page 1376 a certificate of live birth for "Silvester Joyner," the defendant. The State, after authentication by Mrs. Allred, introduced into evidence, as Exhibit X, page 1376 of Volume 43 of the Birth Records of Pitt County. This document indicates that defendant was born on 19 October 1957, making him over nineteen years of age at the time of the commission of the alleged crimes.

[5] Defendant contends that the admission of this official record into evidence was error, arguing that the State did not satisfy the requirements set forth in *State v. Gray*, 292 N.C. 270, 233 S.E. 2d 905 (1977). In that case the Court held it error for the trial court to admit a document, signed by a deputy registrar, purporting to be a certificate of birth, where the document was not in fact the original certificate of birth nor even a certified copy of that official record, but rather was merely a summary of information apparently contained in the defendant's birth certificate. As such, the document was double hearsay, and inadmissible.

Contrary to defendant's contentions, the document offered into evidence in the present case does satisfy the requirements of *State v. Gray*, insofar as that case is even relevant. The document in present case is an *original* public record—the certificate of live birth itself—which is on file in the Pitt County Register of Deeds Office. It has long been the law in this State that original official records are admissible into evidence, when properly authenticated, for purposes of proof of matters relevant to the information contained in the official record. *See generally* 1 Stansbury, N.C. Evidence § 153 (Brandis rev. 1973). In the early case of *Jacocks v. Gilliam*, 7 N.C. 47 (1819), the Court, in holding the official registry of marriages admissible to prove pedigree, said: ". . . A book kept by public authority, is necessarily evidence of the facts recorded in it. . . ." *See also State v. Melton*, 120 N.C. 591, 26 S.E. 933 (1897).

The admissibility of official writings of various sorts is now governed largely by several miscellaneous statutes which, collectively, cover a wide range. Stansbury, *ibid.*, p. 509. This doctrine of the official records exception to the hearsay rule has been expanded by statute to include the admission of certified *copies* of official records. *See* G.S. 8-34; G.S. 130-66. It is still, however, the case that "while certified copies of records are admitted in evidence, the originals are not thereby made incompetent." *Riley v. Carter*, 165 N.C. 334, 81 S.E. 414 (1914).

The certificate of birth introduced into evidence in the present case was an original public record which was properly authenticated by the official custodian of the document. The information contained in the document was therefore competent evidence of the facts recorded, *viz*, the date of defendant's birth. *Cf.* G.S. 8-34 and G.S. 130-66. The trial court correctly denied defendant's motion to dismiss the charge of first degree rape.

Defendant next assigns as error the denial of his motion for judgment as of nonsuit on the charge of armed robbery. Defendant contends that no evidence was presented which showed that at the time the victim removed the ring from her finger she was either endangered or threatened by the use of a firearm or other dangerous weapon. Nor, argues defendant, did the evidence for the State show that the victim was in fear for her life at the time she surrendered the ring to her assailants. This assignment is without merit.

G.S. 14-87 states, in part:

"(a) Any person or persons who, having in possession or with the use or threatened use of any firearms or other dangerous weapon, implement or means, whereby the life of a person is endangered or threatened, unlawfully takes or attempts to take personal property from another or from any place of business, residence or banking institution or any other place where there is a person or persons in attendance, at any time, either day or night, or who aids or abets any such person or persons in the commission of such crime, shall be guilty of a felony and upon conviction thereof shall be punished by imprisonment for not less than seven years nor more than life imprisonment in the State's prison."

[6] The essential difference between armed robbery and common law robbery is that, to prove the former, the State must produce evidence sufficient to show that the victim was endangered or threatened by the use or threatened use of a "firearm or other dangerous weapon, implement or means." G.S. 14-87(a); *State v. Bailey*, 278 N.C. 80, 178 S.E. 2d 809 (1971), *cert. denied*, 409 U.S. 948, 34 L.Ed. 2d 218, 93 S.Ct. 293 (1972); *State v. Evans*, 279 N.C. 447, 183 S.E. 2d 540 (1971). The question in an armed robbery case is whether a person's life was in fact endangered or threatened by defendant's possession, use or threatened use of a dangerous weapon, not whether the victim was scared or in fear of his life. *State v. Moore*, 279 N.C. 455, 183 S.E. 2d 546 (1971). As the Court held in *Moore*, the essentials of the offense set forth in G.S. 14-87 are (1) the unlawful taking or attempted taking of personal property from another; (2) the possession, use or threatened use of "firearms or other dangerous weapon, implement or means"; and (3) danger or threat to the life of the victim.

Thus, in present case, though there was evidence sufficient to show that the victim was in fear for her life, the State did not have to prove such fear to overcome defendant's motion for nonsuit. Rather, the State could prove, at the least, that during the course of the robbery or attempted robbery, there was a *threatened use* of a dangerous weapon which endangered or threatened the life of the victim.

[7] That the State proved as much is clear from the record. Prior to the robbery itself, while Ms. Lincoln was being sexually

assaulted by defendant's accomplices, the defendant told Ms. Lincoln that if she wanted her daughter to stay alive, she would keep quiet and do what the men told her to do. Moments later one of the assailants held a gun to her head, and "said that if I didn't do what they said he would blow my brains out." Defendant later took the gun and pointed it toward the daughter's head, telling Ms. Lincoln that the same would happen to her if she did not cooperate. Ms. Lincoln testified that, "At the time the ring was removed from my finger, Mr. Joyner had the firearm there in the kitchen," and, finally, that defendant was in her presence the entire half hour.

It is clear from this evidence that Ms. Lincoln was placed under a continuing threat with a firearm. Though Ms. Lincoln did not testify that defendant actually pointed the gun at her at the time she gave her ring to his accomplice, earlier there had been such "use" of the firearm as to force her to commit certain acts, and it had been made clear to her on several occasions prior to the actual taking of her ring that the firearm would be used against her if she did not comply. This continuing threat extended to every subsequent act by her, and thus constituted a "threatened use" of a firearm which "endangered or threatened" her life within the terms of G.S. 14-87(a). *See also State v. Harris,* 281 N.C. 542, 189 S.E. 2d 249 (1972). The evidence presented by the State was, therefore, sufficient to overcome defendant's motion for nonsuit.

[8] Defendant next argues that the trial judge should not have submitted to the jury the charge of assault with a deadly weapon inflicting serious bodily injury, for the reason that there was no evidence that the Pepsi-Cola bottle, as used, was a deadly weapon or that Ms. Lincoln suffered serious bodily injury as a result of the assault.

An instrument which is likely to produce death or great bodily harm under the circumstances of its use is properly denominated a deadly weapon. *State v. Cauley,* 244 N.C. 701, 94 S.E. 2d 915 (1956); *State v. Perry,* 226 N.C. 530, 39 S.E. 2d 460 (1946). But where the instrument, according to the manner of its use or the part of the body at which the blow is aimed, may or may not be likely to produce such results, its allegedly deadly

character is one of fact to be determined by the jury. *State v. Perry, supra; State v. Watkins*, 200 N.C. 692, 158 S.E. 393 (1931).

The term "inflicts serious injury," under G.S. 14-32(b), means physical or bodily injury resulting from an assault with a deadly weapon. The injury must be serious but it must fall short of causing death. *State v. Jones*, 258 N.C. 89, 128 S.E. 2d 1 (1962). Evidence that the victim was hospitalized is not necessary for the proof of serious injury. *Cf. State v. Ferguson*, 261 N.C. 558, 135 S.E. 2d 626 (1964). Whether serious injury has been inflicted must be determined according to the particular facts of each case and is a question which the jury must decide under proper instructions. *State v. Ferguson, supra; State v. Jones, supra.*

In instant case a lone woman, attacked by five males, was held down by defendant while an accomplice rammed a bottle into her rectum with such force as to cause excessive bleeding, dilation of the rectum, and the infliction of multiple cuts, some deep and long, about the rectum. Ms. Lincoln was examined by two physicians, and had to visit a physician regularly for some two months thereafter for treatment. Since the bottle used is an instrument which, depending on its use, may or may not be likely to produce great bodily harm, the trial judge properly submitted the question regarding its deadly character to the jury. Likewise, there being evidence of physical or bodily injury to the victim, the question of the nature of these injuries was also properly submitted to the jury. In both instances the State introduced evidence sufficient to overcome defendant's motion for nonsuit. Therefore the trial judge correctly submitted to the jury, under proper instructions, the questions whether the bottle involved was a deadly weapon and whether serious injury was inflicted. These were questions for the jury's determination from the evidence. This assignment is overruled.

[9] Finally, defendant argues that the trial court erred in denying defendant's motion to dismiss the charge of crime against nature. At trial the victim testified that the defendant put his mouth on her vagina and inserted his tongue into her vagina. Defendant argues that such behavior does not constitute a crime against nature since an essential element of the crime is some penetration of or by the sexual organ of the male.

Contrary to defendant's contention, though penetration by or of a sexual organ is an essential element of the crime, *State v. Whittemore*, 255 N.C. 583, 122 S.E. 2d 396 (1961), the crime against nature is not limited to penetration by the *male* sexual organ. In *State v. Griffin*, 175 N.C. 767, 94 S.E. 678 (1917), the Court said "our statute [now G.S. 14-177] is broad enough to include in the crime against nature other forms of the offense than sodomy and buggery. . . ." The crime includes unnatural acts with animals, and acts between humans *per anum* and *per os*. *State v. Harward*, 264 N.C. 746, 142 S.E. 2d 691 (1965); *State v. Fenner*, 166 N.C. 247, 80 S.E. 970 (1914). In present case the State's evidence showed that the defendant penetrated the victim's female sexual organ with his tongue. This is sufficient evidence to overrule defendant's motion for nonsuit.

Other assignments of error not brought forward and discussed in defendant's brief are deemed abandoned. Rule 28(a), Rules of Appellate Procedure, 287 N.C. 671, 741.

Our examination of the entire record discloses that defendant has had a fair trial, free from prejudicial error.

No error.