An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-645

NORTH CAROLINA COURT OF APPEALS

Filed: 15 April 2014

STATE OF NORTH CAROLINA

v.

Columbus County
No. 11 CRS 53760, 53725-27

RICKY LEVELL MITCHELL

Appeal by defendant from judgments entered 20 February 2013 by Judge D. Jack Hooks, Jr., in Columbus County Superior Court. Heard in the Court of Appeals 21 November 2013.

> *Attorney General Roy Cooper, by Assistant Attorney General Scott A. Conklin, for the State.*

> *Unti & Lumsden LLP, by Margaret C. Lumsden, for Defendant.*

ERVIN, Judge.

Defendant Ricky Levell Mitchell appeals from judgments sentencing him to a term of 64 to 86 months imprisonment based upon his convictions for robbery with a dangerous weapon and obtaining property by false pretenses and to a term of 6 to 8 months imprisonment based upon his convictions for uttering a forged instrument. On appeal, Defendant argues that the trial court erred by denying his motions to dismiss the robbery with a dangerous weapon charge, by failing to instruct the jury concerning the issue of his guilt of the lesser included offense

of common law robbery, by joining all of the charges that had been lodged against him for trial, and by allowing the admission of impermissible lay opinion testimony, and that he received ineffective representation from his trial counsel given his trial counsel's failure to request that the jury be instructed concerning the issue of his guilt of the lesser included offense of common law robbery. After careful consideration of Defendant's challenges to the trial court's judgments in light of the record and the applicable law, we conclude that the trial court's judgments should remain undisturbed.

## I. Factual Background

### A. Substantive Facts

#### 1. The Checks

Lee A. Walker, a resident of the Lake Waccamaw retirement home, became friends with Defendant's mother, Melinda Mitchell. Ms. Mitchell, a nursing assistant at the retirement home, would take Mr. Walker with her to church. Mr. Walker had his mail, including financial information, sent to Ms. Mitchell's address because he did not trust the way in which the retirement home handled his mail. In addition, Ms. Mitchell helped Mr. Walker set up a checking account at the State Employees' Credit Union. Defendant often accompanied Ms. Mitchell and Mr. Walker to the SECU.

After he received an order of checks that had been delivered to Ms. Mitchell's residence, Mr. Walker noticed that the box containing the checks had been opened and that a pack of checks was missing. Subsequently, Mr. Walker discovered that three checks written on his account in the total amount of $1,900 had been cashed on 7 October 2011, 10 October 2011, and 15 October 2011, respectively. Mr. Walker denied having written the checks in question or authorizing anyone to access the monies contained in his account.

After discovering that the checks had been cashed, Mr. Walker spoke with Ms. Linda Cartrette, a SECU employee. After Ms. Cartrette showed him photographs of an individual cashing the checks, Mr. Walker identified Defendant as the person depicted in those photographs and told Ms. Cartrette that he had not given Defendant permission to engage in the transactions. Upon comparing the signatures on the cashed checks with Mr. Walker's signature, Ms. Cartrette confirmed that the two signatures did not match.

## 2. The Robbery

On 7 November 2011, Defendant, Tremayne Davis, and Kendrell Robinson decided to arrange to sell some marijuana to Mr. Walker as a pretext for robbing him. After speaking with Defendant by telephone, Mr. Walker agreed to meet Defendant at the retirement home. According to Mr. Davis, who testified for the State

pursuant to an agreement under which he was allowed to plead guilty to common law robbery and receive a probationary sentence, Mr. Walker was at the meeting place when the group arrived. At that point, all three men got out of the car. As Mr. Davis and Mr. Robinson, who was carrying a gun, approached Mr. Walker and pointed the gun at Mr. Walker's head, Mr. Davis told Mr. Walker to "give it up," grabbed the money that was in Mr. Walker's hands, and took his cell phone and a wallet containing an ATM card before reentering the car with the rest of the group and driving away.[1]

After the robbery, the three men drove to a grocery store at which Defendant used Mr. Walker's ATM card to obtain cash. According to Mr. Walker, the PIN number associated with his ATM card had been mailed to the residence of Defendant's mother. Subsequently, the three men drove to a second ATM and made another effort to obtain cash using Mr. Walker's ATM card. However, this attempt failed because the card had been deactivated. According to Mr. Davis, Defendant had Mr. Walker's card reactivated by phone and made another withdrawal.

After being dispatched to the scene of the robbery, Officer Adam Sellers of the Lake Waccamaw Police Department spoke with Mr. Walker and made arrangements to have Mr. Walker's ATM card

---

[1]Mr. Walker could not identify the individuals involved in the robbery and simply recalled that two men got out of the car and approached him while another person remained in the car.

permanently deactivated. While speaking with Officer Sellers, Mr. Walker mentioned Defendant as a potential suspect and described the car that had been used to facilitate the robbery. Later that night, law enforcement stopped the vehicle in which Defendant was riding based on outstanding warrants that had been issued as a result of the unauthorized cashing of checks drawn on Mr. Walker's account. Although Defendant denied having had any involvement in the robbery of Mr. Walker, Officer Sellers testified that the sweatshirt that Defendant was wearing at the time that he was taken into custody matched the sweatshirt worn by an individual photographed using an ATM that night.

## B. Procedural History

On 7 November 2011, warrants for arrest charging Defendant with three counts of forgery and uttering were issued. On 10 November 2011, a warrant for arrest charging Defendant with robbery with a dangerous weapon and obtaining property by false pretenses was issued. On 9 May 2012, the Columbus County grand jury returned a bill of indictment charging Defendant with robbery with a dangerous weapon and obtaining property by false pretenses. On 8 August 2012, the Columbus County grand jury returned bills of indictment charging Defendant with three counts of forgery and uttering. On 6 September 2012, the Columbus County grand jury returned superseding indictments in two of the three forgery and uttering cases.

The charges against Defendant came on for trial before the trial court and a jury at the 18 February 2013 criminal session of the Columbus County Superior Court. At the beginning of the trial proceedings, the trial court allowed the State's motion to join all of the charges that had been lodged against Defendant for trial. At the conclusion of the State's evidence, the trial court granted Defendant's motion to dismiss the forgery charges for insufficiency of the evidence. On 20 February 2013, the jury returned a verdict convicting Defendant of robbery with a dangerous weapon, obtaining property by false pretenses, and three counts of uttering a forged instrument. At the conclusion of the ensuing sentencing hearing, the trial court consolidated Defendant's robbery with a dangerous weapon and obtaining property by false pretenses convictions for judgment and entered a judgment sentencing Defendant to a term of 64 to 86 months imprisonment and consolidated Defendant's convictions for uttering a forged instrument for judgment and entered a judgment sentencing Defendant to a term of 6 to 8 months imprisonment.

Although Defendant contends that his trial counsel intended to give oral notice of appeal in open court after the entry of judgment, the record is completely devoid of any indication that Defendant's appeal from the trial court's judgments was ever noted either orally or in writing. On 5 August 2013 and 26 August 2013, respectively, Defendant filed a petition and an

amended petition seeking the issuance of a writ of *certiorari* authorizing appellate review of the 20 February 2013 judgments. As a result of the fact that "[t]he writ of *certiorari* may be issued in appropriate circumstances by either appellate court to permit review of the judgments and orders of trial tribunals when the right to prosecute an appeal has been lost by failure to take timely action," N.C.R. App. P. 21(a), and our belief that Defendant should not lose the right to appellate review of the trial court's judgments based upon the apparent failure of his trial counsel to note an appeal from the trial court's judgments in a timely manner, we elect, in the exercise of our discretion, to grant Defendant's *certiorari* petition.[2]

## II. Substantive Legal Analysis

### A. Sufficiency of the Evidence of Robbery

In his initial challenge to the trial court's judgments, Defendant contends that the trial court erred by denying his motion to dismiss the robbery charge for insufficiency of the evidence. More specifically, Defendant argues that the trial court should have granted Defendant's dismissal motion because

---

[2]N.C.R. App. P. 9(b)(1) states that "[t]he items constituting the record on appeal should be arranged, so far as practicable, in the order in which they occurred or were filed in the trial tribunal." However, the record on appeal in this case was arranged, to a considerable extent, by grouping items on the basis of the file number assigned to those items in the court below. We urge counsel representing parties on appeal to comply with the chronological presentation requirement mandated by N.C.R. App. P. 9(b)(1).

the record contained no indication that he possessed a firearm during the robbery. Defendant's argument lacks merit.

## 1. Standard of Review

In reviewing the denial of a defendant's motion to dismiss, "'the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied.'" *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (quoting *State v. Barnes*, 334 N.C. 67, 75, 430 S.E.2d 914, 918 (1993)), *cert. denied*, 531 U.S. 890, 121 S. Ct. 213, 148 L. Ed. 2d 150 (2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). "In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994), *cert. denied*, 515 U.S. 1135, 115 S. Ct. 2565, 132 L. Ed. 2d 818 (1995).

## 2. Sufficiency of the Evidence to Support Robbery Conviction

The elements of the crime of robbery with a dangerous weapon are: (1) the unlawful taking or attempted taking of personal property from another, (2) the possession, use or threatened use of a firearm or other dangerous weapon, and (3) the creation of a danger or threat to the life of the victim. N.C. Gen. Stat. § 14-87(a); *State v. Joyner*, 295 N.C. 55, 63, 243 S.E.2d 367, 373 (1978). "Under the theory of acting in concert, if two or more persons join in a purpose to commit a crime, each person is responsible for all unlawful acts committed by the other persons as long as those acts are committed in furtherance of the crime's common purpose." *State v. Hill*, 182 N.C. App. 88, 92-93, 641 S.E.2d 380, 385 (2007) (citing *State v. Erlewine*, 328 N.C. 626, 637, 403 S.E.2d 280, 286 (1991)). As a result, in order to establish a defendant's guilt of the crime of robbery with a dangerous weapon, "the State need not present evidence that defendant actually possessed the dangerous weapon" and "must only show that defendant 'acted in concert to commit robbery and that his co-defendant used the dangerous weapon in pursuance of that common purpose to commit robbery.'" *Hill*, 182 N.C. App. at 93, 641 S.E.2d at 385 (quoting *State v. Johnson*, 164 N.C. App. 1, 13, 595 S.E.2d 176, 183, *disc. review denied*, 359 N.C. 194, 607 S.E.2d 658 (2004)).

The record, when viewed in the light most favorable to the State, contains evidence tending to show that Defendant, Mr. Davis, and Mr. Robinson acted in concert for the purpose of robbing Mr. Walker of his money, wallet, and cell phone; that a gun was used during the commission of this criminal offense; and that Mr. Walker felt that his life was endangered during the robbery. The fact that the robbery indictment returned against Defendant did not allege that he acted as an accomplice or aided and abetted Mr. Davis and Mr. Robinson simply has no bearing on the proper resolution of this issue. As a result, the record contains ample evidence tending to show Defendant's guilt of robbery with a dangerous weapon on the grounds that he acted in concert to commit that offense with Mr. Davis and Mr. Robinson, a fact that establishes that the trial court correctly denied Defendant's motion to dismiss the robbery with a dangerous weapon charge.

### B. Common Law Robbery Instruction

Secondly, Defendant contends that the trial court erred by failing to instruct the jury concerning the issue of his guilt of the lesser included offense of common law robbery. According to Defendant, the jury should have been allowed to consider the issue of his guilt of common law robbery on the grounds that the record contains evidence tending to show that he did not use a

weapon during the robbery of Mr. Walker. We do not find Defendant's argument persuasive.

## 1. Standard of Review

"[A] trial judge must instruct the jury on all lesser included offenses that are supported by the evidence, even in the absence of a special request for such an instruction," with "the failure to do so [constituting] reversible error which is not cured by a verdict finding the defendant guilty of the greater offense." *State v. Montgomery*, 341 N.C. 553, 567, 461 S.E.2d 732, 739 (1995). "The trial court may refrain from submitting the lesser offense to the jury only where the 'evidence is clear and positive as to each element of the offense charged' and no evidence supports a lesser-included offense." *State v. Lawrence*, 352 N.C. 1, 19, 530 S.E.2d 807, 819 (2000) (quoting *State v. Peacock*, 313 N.C. 554, 558, 330 S.E.2d 190, 193 (1985)), *cert. denied*, 531 U.S. 1083, 121 S. Ct. 789, 148 L. Ed. 2d 684 (2001). As a result, the ultimate issue raised by Defendant's challenge to the trial court's failure to submit the issue of his guilt of the lesser included offense of common law robbery for the jury's consideration is whether the record contains sufficient evidence from which the jury could have reasonably concluded that Defendant was guilty of that offense.

## 2. Common Law Robbery

Common law robbery, which is "the non-consensual taking of money or personal property from another by means of violence or fear," *State v. White*, 142 N.C. App. 201, 204, 542 S.E.2d 265, 267 (2001), is "a lesser included offense of armed robbery or robbery with a firearm or other dangerous weapon," so that "an indictment for armed robbery will support a conviction of common law robbery." *State v. Tarrant*, 70 N.C. App. 449, 451, 320 S.E.2d 291, 293-94 (1984). "The critical difference between armed robbery and common law robbery is that the former is accomplished by the use or threatened use of a dangerous weapon whereby the life of a person is endangered or threatened" while "[t]he use or threatened use of a dangerous weapon is not an essential element of common law robbery." *Peacock*, 313 N.C. at 562-63, 330 S.E.2d at 195 (citations omitted). "[T]he trial judge is not required to instruct on common law robbery when the defendant is indicted for armed robbery if the uncontradicted evidence indicates that the robbery, if perpetrated, was accomplished by the use of what appeared to be a dangerous weapon." *Tarrant*, 70 N.C. App. at 451-52, 320 S.E.2d at 294 (citing *State v. Porter*, 303 N.C. 680, 686-87, 281 S.E.2d 377, 382 (1980)).

As the uncontroverted evidence contained in the present record tends to show, the robbery of Mr. Walker was committed with the threatened use of a firearm. More specifically, both

Mr. Walker and Mr. Davis testified that a gun was used during the robbery. The record contains absolutely no evidence tending to contradict this aspect of the testimony presented by Mr. Walker and Mr. Davis. For that reason, we have no hesitation in concluding that all of the evidence tends to show that Defendant, Mr. Davis, and Mr. Robinson, who were acting in concert, took Mr. Walker's property while using a firearm, a fact that establishes the existence of the elements necessary to support Defendant's conviction for robbery with a dangerous weapon. *Joyner*, 295 N.C. at 63, 243 S.E.2d at 373. The fact that Defendant did not actually possess the firearm used during the robbery of Mr. Walker simply does not, contrary to Defendant's contention, have any bearing on the proper resolution of this issue. As a result, the trial court did not err by failing to instruct the jury concerning the issue of Defendant's guilt of the lesser included offense of common law robbery.

### C. Ineffective Assistance of Counsel

Thirdly, Defendant contends that he received constitutionally deficient representation from his trial counsel as the result of his trial counsel's failure to request the trial court to instruct the jury concerning the issue of his guilt of the lesser included offense of common law robbery. Defendant's argument lacks merit.

"To prevail on a claim of ineffective assistance of counsel, a defendant must first show that his counsel's performance was deficient and then that counsel's deficient performance prejudiced his defense." *State v. Allen*, 360 N.C. 297, 316, 626 S.E.2d 271, 286 (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674, 693 (1984)), *cert. denied*, 549 U.S. 867, 127 S. Ct. 164, 166 L. Ed. 2d 116 (2006). "Counsel's performance is deficient when it falls 'below an objective standard of reasonableness.'" *State v. Waring*, 364 N.C. 443, 502, 701 S.E.2d 615, 652 (2010) (quoting *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2064, 80 L. Ed. 2d at 693), *cert. denied*, __ U.S. __, 132 S. Ct. 132, 181 L. Ed. 2d 53 (2011). A defendant is prejudiced by such deficient performance when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," with such a "reasonable probability" being "a probability sufficient to undermine confidence in the outcome." *Allen*, 360 N.C. at 316, 626 S.E.2d at 286 (citations and quotation marks omitted).

In his brief, Defendant contends that the representation that he received from his trial counsel was deficient given his trial counsel's alleged failure to request the trial court to instruct the jury concerning the issue of his guilt of the lesser included offense of common law robbery. The first

problem with this argument is that Defendant's trial counsel did, in fact, unsuccessfully request that the jury be allowed to consider the issue of his guilt of common law robbery. In addition, given the absence of any evidence tending to show that Defendant was guilty of common law robbery, any deficient representation that Defendant might have received from his trial counsel did not prejudice his chances for a more favorable outcome at trial. As a result, Defendant is not entitled to relief from the trial court's judgments based upon this ineffective assistance of counsel claim.

### D. Joinder

Fourthly, Defendant contends that the trial court erroneously joined all of the offenses with which he had been charged for trial. More specifically, Defendant argues that the uttering charges should not have been joined for trial with the robbery and false pretenses charges given the absence of a transactional connection between these two sets of offenses. We are not persuaded by Defendant's contention.

N.C. Gen. Stat. § 15A-926(a) provides that "[t]wo or more offenses may be joined . . . for trial when the offenses . . . are based on the same act or transaction or on a series of acts or transactions connected together or constituting parts of a single scheme or plan." N.C. Gen. Stat. § 15A-926(a). "A motion to consolidate charges for trial is addressed to the

sound discretion of the trial judge and that ruling will not be disturbed on appeal absent an abuse of discretion." *State v. Silva*, 304 N.C. 122, 126, 282 S.E.2d 449, 452 (1981). "If, however, the charges consolidated for trial possess no transactional connection, then the consolidation is improper as a matter of law." *Id.* "In considering whether a transactional connection exists among offenses, our courts have taken into consideration such factors as the nature of the offenses charged, commonality of facts, the lapse of time between offenses, and the unique circumstances of each case." *State v. Herring*, 74 N.C. App. 269, 273, 328 S.E.2d 23, 26 (1985) (citations and internal quotation marks omitted), *aff'd,* 316 N.C. 188, 340 S.E.2d 105 (1986). In resolving the issues raised by a joinder motion, the trial court must also consider whether a decision to allow that motion would hinder the defendant's ability to present a defense or deprive him or her of a fair trial. *State v. Greene*, 294 N.C. 418, 421, 241 S.E.2d 662, 664 (1978). As a result, "[t]he question is whether the offenses are so separate in time and place and so distinct in circumstances as to render a consolidation unjust and prejudicial to defendant." *Id.* at 423, 241 S.E.2d at 665.

All of the charges that have been lodged against Defendant in this case stem from a series of acts which were committed against Mr. Walker and arose from Defendant's relationship with

Mr. Walker and which were facilitated by Defendant's familiarity with Mr. Walker's financial situation. As a result of the relationship between his mother and Mr. Walker, Defendant had access to Mr. Walker's checks and to information relating to his SECU account, including the ATM PIN number associated with that account. According to the evidence presented at trial, Defendant used the information to which he had access in order to cash checks drawn on Mr. Walker's SECU account and to withdraw money from Mr. Walker's SECU account using the ATM card that was stolen during the robbery. According to Mr. Davis, he, Mr. Robinson, and Defendant decided to rob Mr. Walker in light of Defendant's statement to the effect that he knew someone with money. Thus, since the record shows the existence of a transactional relationship between the charges that the trial court allowed to be joined for trial and since we are unable to see how Defendant was deprived of a fair trial by the trial court's decision to join the uttering charges with the robbery and false pretenses charges, the trial court did not abuse its discretion by allowing the State's joinder motion. *Silva*, 304 N.C. at 126, 282 S.E.2d at 452.[3]

---

[3] In attempting to persuade us to reach a different result, Defendant cites several cases in which this Court held that a trial court erroneously joined a number of offenses for trial. The cases upon which Defendant relies are easily distinguishable from the instant case, however, given that the cases upon which Defendant relies involved offenses committed against multiple

## E. Lay Witness Testimony

Finally, Defendant argues that the trial court erred by allowing the admission of impermissible lay opinion testimony. More specifically, Defendant contends that the trial court erred by allowing Ms. Cartrette to describe the differences between Mr. Walker's signature and that found on the forged checks, allowing Officer Sellers to compare the sweatshirt that Defendant was wearing at the time that he was taken into custody with the sweatshirt worn by the individual depicted in the ATM photograph, and by allowing Ms. Cartrette to identify the individual depicted in the ATM photograph. Defendant is not entitled to relief from the trial court's judgments based upon this series of contentions.

### 1. Standard of Review

As a general proposition, lay witnesses are permitted to offer "opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." N.C. Gen. Stat. § 8C-1, Rule 701. "[W]hether a lay witness may testify as to an opinion is reviewed for abuse of discretion." *State v. Washington*, 141 N.C. App. 354, 362, 540

alleged victims while this case involves multiple offenses committed against the same individual stemming from Defendant's familiarity with and access to that individual's financial information.

S.E.2d 388, 395 (2000), *disc. review denied*, 353 N.C. 396, 547 S.E.2d 427 (2001).  An "[a]buse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988).

## 2. Analysis of Specific Instances of Lay Opinion Testimony

### a. Testimony Regarding Mr. Walker's Signature

In discussing the differences between Mr. Walker's signature and the signatures that appeared on the forged checks that Defendant presented for payment, Ms. Cartrette described Mr. Walker's signature as "a little bit of scribbling, it's not really smooth handwriting," and described the signatures on the forged checks as "tend[ing] to be smooth."  Although Defendant argues that the jury should not have been allowed to hear Ms. Cartrette's comments, we believe that her testimony describing the signatures was "rationally based on [her] perception" of the differences between those signatures and was helpful in determining whether the checks that Defendant presented for payment had been forged.  N.C. Gen. Stat. § 8C-1, Rule 701.  As a result, the trial court's decision to allow the admission of this portion of Ms. Cartrette's testimony was not "so arbitrary that it could not have been the result of a reasoned decision." *Hennis*, 323 N.C. at 285, 372 S.E.2d at 527.

Moreover, "[e]videntiary error does not necessitate a new trial unless the erroneous admission was prejudicial." *State v. Wilkerson*, 363 N.C. 382, 415, 683 S.E.2d 174, 194 (2009), *cert. denied*, 559 U.S. 1074, 130 S. Ct. 2104, 176 L. Ed. 2d 734 (2010). Even if the trial court erred by allowing Ms. Cartrette to comment upon the differences between Mr. Walker's signature and the signatures appearing on the checks that Defendant presented for payment, any such error was clearly harmless. "A defendant is prejudiced by evidentiary error 'when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises.'" *Id.* (quoting N.C. Gen. Stat. § 15A-1443(a)). At trial, Mr. Walker testified that he had not written the checks that Defendant presented for payment and that his handwriting, rather than being smooth, was like "chicken scratch" as the result of a prior stroke. Similarly, another SECU employee named Natalie Frazier testified that Mr. Walker had difficulty signing his name and that his signature was "somewhat jagged." As a result, since "substantially the same evidence [was elicited] through other witnesses," *State v. Richardson*, 341 N.C. 658, 671, 462 S.E.2d 492, 501 (1995), we hold that, even if the trial court erroneously admitted Ms. Cartrette's testimony concerning the differences between Mr. Walker's signature and those found on the checks that Defendant

presented for payment, there is not "a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial." N.C. Gen. Stat. § 15A-1443(a).

### b. Testimony Regarding Defendant's Sweatshirt

At trial, Officer Sellers testified that the sweatshirt that he observed Defendant wearing at the time that he was taken into custody on the night of the robbery was the same as the sweatshirt worn by an individual depicted in ATM photographs taken that same evening. Although Defendant contends that the trial court should have excluded this portion of Officer Sellers' testimony, we conclude, as we have in similar cases, that the challenged testimony was rationally based upon Officer Sellers' personal observation of the sweatshirt that Defendant was wearing on the night of the robbery and was helpful in identifying the individual depicted in the ATM photograph. *See State v. Mewborn*, 131 N.C. App. 495, 499, 507 S.E.2d 906, 909 (1998) (holding that the trial court did not err by admitting an officer's testimony that the markings on the defendant's shoes were consistent with the markings shown on shoes worn by the perpetrator depicted in a video of a robbery in light of the fact that this testimony was based upon the officer's personal observation of the defendant's shoes when he was brought in for questioning). As a result, the trial court did not err by

allowing Officer Sellers to testify concerning the resemblance between the sweatshirt that Defendant was wearing when he was taken into custody and the sweatshirt worn by an individual depicted in an ATM photograph taken that same night.

### c. Testimony Identifying Defendant as Depicted in Certain Photographs

Finally Defendant argues that the trial court erred by allowing Ms. Cartrette to identify him as the individual depicted in the ATM photographs.[4] Defendant did not, however, object to the admission of Ms. Cartrette's testimony identifying Defendant as the individual depicted in certain photographs admitted into evidence at trial. As a result, our review of Defendant's challenge to the admission of this portion of Ms. Cartrette's testimony is limited to determining whether he is entitled to appellate relief on plain error grounds. *State v. Mendoza*, 206 N.C. App. 391, 395, 698 S.E.2d 170, 174 (2010)

---

[4]As a preliminary matter, we note that different sets of photographs were discussed during the course of Ms. Cartrette's testimony and that Defendant has not clearly identified the photographs relating to the testimony that he seeks to challenge in his brief. The first set of photographs discussed in Ms. Cartrette's testimony depict an individual whom Ms. Cartrette identified as Defendant cashing the stolen checks. A second set of photographs discussed in Ms. Cartrette's testimony depict an individual using Mr. Walker's stolen ATM card to make a withdrawal. Although this individual is wearing a sweatshirt, his or her face cannot be seen. Ms. Cartrette did not identify Defendant as the individual depicted in this second set of photographs. As a result, we conclude that Defendant's argument is directed toward Ms. Cartrette's testimony relating to the first, rather than the second, set of photographs discussed in her testimony.

(stating that, since defendant "did not [ ] object to the admission of any of this testimony at trial," "we, therefore, review the admission of the testimony only for plain error").

"In criminal cases, an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error." N.C.R. App. P. 10(a)(4). An error rises to the level of plain error in the event that the error in question is "so fundamental that it undermines the fairness of the trial, or [has] a probable impact on the guilty verdict." *State v. Floyd*, 148 N.C. App. 290, 295, 558 S.E.2d 237, 240 (2002). For that reason, in order to obtain relief on plain error grounds, a convicted criminal defendant must show "(i) that a different result probably would have been reached but for the error or (ii) that the error was so fundamental as to result in a miscarriage of justice or denial of a fair trial." *State v. Bishop*, 346 N.C. 365, 385, 488 S.E.2d 769, 779 (1997) (citations omitted).

Aside from the fact that Defendant has failed to specifically contend in his brief that the admission of the challenged portion of Ms. Cartrette's testimony constituted plain error, we conclude that Defendant's contention has no

merit as a substantive matter. The evidence presented at trial identifying Defendant as the perpetrator of the offenses at issue in this case separate and apart from the challenged portion of Ms. Cartrette's testimony was very strong. Defendant had access to and possessed considerable information about Mr. Walker's finances. As we have already noted, Mr. Walker identified Defendant in the photographs taken at the SECU as the individual who presented the checks wrongfully drawn on his account for payments. Similarly, Officer Sellers testified that the sweatshirt worn by the individual captured in the ATM photographs matched the sweatshirt that Defendant was wearing on the night of the robbery. Finally, Mr. Davis clearly described Defendant's involvement in the robbery of Mr. Walker and the use of Mr. Walker's ATM card to obtain cash. As a result, even if the trial court erred by admitting Ms. Cartrette's testimony identifying him as the individual depicted in the photographs, Defendant has not shown that "a different result probably would have been reached but for the error" or "that the error was so fundamental as to result in a miscarriage of justice or denial of a fair trial" so as to rise to the level of plain error. *Bishop*, 346 N.C. at 385, 488 S.E.2d at 779. As a result, Defendant is not entitled to relief from the trial court's judgments based upon the admission of the challenged portion of Ms. Cartrette's testimony.

## III. Conclusion

Thus, for the reasons set forth above, we conclude that none of Defendant's challenges to the trial court's judgments have merit. As a result, the trial court's judgments should, and hereby do, remain undisturbed.

NO ERROR.

Judges GEER and STEPHENS concur.

Report per Rule 30(e).